Emery v. Wood                          CV-98-480-M   08/20/01
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


John Emery,
      Plaintiff

      v.                                    Civil No. 98-480-M
                                            Opinion No. 2001 DNH 155
Wood Industries, Inc.,
Test-Rite International Co., Ltd. (U.S.),
Test-Rite International Co., Ltd. (Taiwan),
and Anonymous II, Inc. (formerly
Wood Wire Product, Inc.),
      Defendants


                          **O R D E R**


      John Emery brings this action seeking damages for severe

injuries he sustained in an accident he says was caused by a

defective voltage meter.  It appears that the voltage meter in

question has since been recalled by its manufacturer.


      Three companies bearing the name "Test-Rite" have been named

as defendants: Test-Rite Product Corp., a domestic corporation;

Test-Rite International Co., Ltd., also a domestic corporation;

and a Taiwanese corporation bearing the same name - Test Rite

International Co., Ltd.  The Taiwanese entity ("Test-Rite

Taiwan") moves to quash service of process, saying it was not

properly served with a copy of the complaint and summons.

Alternatively, it moves to dismiss the complaint, claiming it

lacks sufficient contacts with this forum to permit the court to exercise personal jurisdiction over it. Finally, it says Emery's claims are barred by the applicable statute of limitations. Emery Objects.

## Discussion

On January 27, 1996, Emery was severely injured when an allegedly defective voltage meter he was using exploded. Following the accident, the New Hampshire Fire Marshall's office began an investigation. Emery says the investigating officials denied him access to the voltage meter and, therefore, precluded him from determining whether it was defective and/or caused his injuries. Eventually, counsel for Emery brought suit in state court seeking a judicial order compelling the Fire Marshall's office to release the voltage meter so Emery might subject it to scientific testing and analysis. Testing of the meter took place in or about January of 1998 and Emery's expert(s) concluded that it was defectively designed and/or manufactured.

Approximately seven months later (well within the pertinent limitations period), Emery filed this action against Woods Industries, Inc., the company under whose name the voltage meter was sold. Approximately four months after that, Woods informed

2

Emery that the meter had actually been manufactured by a company known as "Test-Rite International Co., Ltd." It provided Emery with two addresses for the company - one in Illinois and one in Taipei, Taiwan. Emery says he subsequently learned that "Test-Rite International Co., Ltd." was listed as a Delaware corporation and a company called "Test-Rite Product Corporation" did business at the Illinois address. Emery then filed a separate complaint against those entities (the "domestic Test-Rite entities"), again within the pertinent statute of limitations. That action was subsequently consolidated with this one.

I.   Service of Process.

In September of 1999, Emery says counsel for Test-Rite International Co., Ltd. (the domestic company) informed him that the voltage meter might have been manufactured by a different entity: a Taiwanese company doing business under the same name (i.e., the company referenced in this order as Test-Rite Taiwan). Emery then sought to add Test-Rite Taiwan as a defendant and serve it with a copy of the complaint and summons. By order dated January 17, 2001, the court held that Emery had failed to properly effect service and, therefore, granted the company's motion to quash service. Nevertheless, the court concluded:

3

> Because Test-Rite [Taiwan] plainly has actual notice of plaintiff's claims, and there is no suggestion of any prejudice to Test-Rite [Taiwan] if plaintiff is afforded additional time to effect service, plaintiff shall effect service within ninety (90) days of the date of this order, in accordance with applicable federal and international law.

Emery v. Wood Industries, Inc., No. 98-480-M, 2001 DNH 016 at 9 (D.N.H. January 17, 2001).

The parties agree that Taiwan is not a party to the Hague Convention. Consequently, pursuant to Rules 4(h)(2) and 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure, Emery requested the Clerk of Court to effect service by mailing a copy of the summons and complaint to Test-Rite Taiwan, certified mail return receipt requested. Such service is authorized by the Federal Rules, provided it is not "prohibited by the law of the foreign country." Fed. R. Civ. P. 4(f)(2)(C). In response to Test-Rite Taiwan's motion, Emery has presented evidence suggesting that such service is not prohibited by the laws of Taiwan. See, e.g., Judicial Assistance-Taiwan, Exhibit A-1 to plaintiff's objection (also available at: http://travel.state.gov/taiwan_legal.html); Letter of Attorney Freddy Ti Pang, Exhibit D to plaintiff's objection.

4

Test-Rite Taiwan, on the other hand, while not denying that it received the copy of the complaint and summons issued by the Clerk of Court, has failed to produce evidence showing that such service is prohibited by the laws of Taiwan. The law upon which it does rely appears to relate to service made upon parties to litigation in a Taiwanese court; it does not seem to address the situation presented in this case - service upon a Taiwanese company of a complaint filed in a foreign country. Accordingly, Test-Rite Taiwan's motion to quash service is denied. See generally Modern Computer Corp. v. Ma, 862 F. Supp. 938, 946 (E.D.N.Y. 1994) ("Based on the affidavits of the plaintiff's Taiwanese counsel, the Court finds that plaintiff has established a prima facie showing the service was proper under Taiwan law").

II. Personal Jurisdiction.

Test-Rite Taiwan next asserts that this court may not properly exercise personal jurisdiction over it. Emery objects, claiming he has made an adequate showing of Test-Rite Taiwan's contacts with this forum to warrant the exercise of personal jurisdiction over it.

A.    Statutory and Constitutional Prerequisites.

It is well established that in a diversity case personal jurisdiction over a nonresident defendant is governed, at least in part, by the forum state's long-arm statute.  See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993).  And, when personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has such jurisdiction.  See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995); Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986).

Allegations of jurisdictional facts are construed in the plaintiff's favor, see Buckley v. Bourdon, 682 F.Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists.  See Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992).  Under those circumstances, "in reviewing the record before it, a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'"  VDI Technologies v. Price, 781 F.Supp. 85, 87

6

(D.N.H. 1991) (quoting <u>Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.</u>, 676 F.Supp. 399, 402 (D.N.H. 1987)).

Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show, first, that the forum state's long-arm statute confers jurisdiction over the defendant, and second, that the exercise of jurisdiction comports with constitutional due process standards (by establishing that the defendant has sufficient "minimum contacts" with the forum state). <u>See</u> <u>Kowalski</u>, 787 F.2d at 9-10. New Hampshire's corporate long-arm statute, N.H. RSA 293-A:15.10, authorizes jurisdiction over foreign corporations and unregistered professional associations to the full extent permitted by federal law. <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1388. Stated another way, New Hampshire's corporate long-arm statute is coextensive with the outer limits of due process protection afforded by the federal constitution. Accordingly, the court need only determine whether the exercise of personal jurisdiction over a foreign defendant would comport with federal constitutional guarantees.

For a court to exercise personal jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must demonstrate that the defendant has "certain

7

minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Before finding that a defendant has such "minimum contacts," however, the court must be satisfied that the defendant's conduct bears such a "substantial connection with the forum state" that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

B.    General v. Specific Jurisdiction.

A court may exercise either general or specific jurisdiction over a defendant. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). With the exception of a passing reference to general jurisdiction in a footnote in his objection, Emery does not seem to seriously contend that Test-Rite Taiwan engaged in "continuous and systematic activity" in New Hampshire. Accordingly, if the court may properly exercise

8

personal jurisdiction over Test-Rite Taiwan, it must be specific jurisdiction.

To assist trial courts in determining whether they might properly exercise specific jurisdiction, the Court of Appeals has formulated a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state contacts. Second, the defendant's in-state activities must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089. With those principles in mind, the court turns to Test-Rite Taiwan's motion to dismiss.

Test-Rite Taiwan is a trading company that does business in countries throughout the world, selling and distributing products made by various manufacturers. It holds a substantial (and perhaps controlling) number of shares of common stock in Test-Rite International Co., Ltd. (U.S.), a domestic holding company. That holding company, in turn, appears to exist for a single purpose: to hold the stock of Test-Rite Product Corporation, a

9

domestic corporation engaged in the sale of numerous consumer products throughout the United States. Thus, Test-Rite Taiwan indirectly controls Test-Rite Product Corp. and sells goods to it for distribution in the United States. Test-Rite Taiwan does, however, have additional contacts with the United States. It also sells products directly to U.S. retail distributors, such as Staples and J.C. Penney. Finally, Test-Rite Taiwan sells products to companies like Woods Industries, which then affix their own names to the products (like the voltage meter at issue in this case) and sell them to U.S. consumers, either directly or through retail distribution chains such as Staples. Consequently, while Test-Rite Taiwan claims to have no direct contacts with this forum, it plainly sells its products in the United States and, more specifically, New Hampshire, through the corporations over which it exercises either direct or indirect control (Test-Rite International Co., Ltd. (U.S.) and Test-Rite Product Corp.), as well as through unaffiliated corporations, like Woods, Staples, and J.C. Penney.

At this stage of the proceeding, the court concludes that Emery has introduced sufficient evidence to make a prima facie showing that: (1) the claim underlying this litigation arises out of, or relates to, Test-Rite Taiwan's contacts with this forum;

10

(2) Test-Rite Taiwan's in-state activities represent a purposeful availment of the privilege of conducting activities in this state; and (3) the exercise of personal jurisdiction over Test-Rite Taiwan would be reasonable, in light of the Gestalt factors identified by the Court of Appeals (of course, the court's conclusion is without prejudice to Test-Rite Taiwan's right to again challenge the exercise of personal jurisdiction, once the record has been more fully developed[1]).

---

[1] In its current form, the record is sufficient (barely) to support the conclusion that Emery has carried his relatively modest burden and made a prima facie showing that the exercise of personal jurisdiction over Test-Rite Taiwan is proper. Test-Rite Taiwan's precise relationship with New Hampshire sellers and distributors of its products is, however, unclear. Whether, on a more fully developed record, it will appear that the court lacks personal jurisdiction over Test-Rite Taiwan is, of course, speculative. Parenthetically, however, the court notes that other courts in the United States (both state and federal) have exercised personal jurisdiction over Test-Rite Taiwan based upon its similar contacts with those forums. See, e.g., Richard v. Wal-Mart Stores, Inc., 1997 WL 578710 (W.D.Va. 1997). Those cases and others involving Test-Rite Taiwan also suggest that Test-Rite Taiwan has a sizeable distribution network in the United States, including the companies referenced above, as well as entities such as Wal-Mart and Home Depot stores, both of which sell products in New Hampshire.

11

III. Statute of Limitations and Federal Rule 15.

Test-Rite Taiwan says Emery amended his complaint and added it as a defendant after the applicable statute of limitations had lapsed. Consequently, it asserts that Emery's claims against it are time barred. Emery disagrees, arguing that he is entitled to the protections afforded by New Hampshire's "discovery rule." Specifically, he claims the pertinent statute of limitations was tolled for approximately two years, while the Fire Marshall's office retained the voltage meter. Prior to that, says Emery, he was unable to determine whether his injuries were caused by a defective product. Accordingly, he claims that until he was permitted to test the voltage meter in question, his "injury and its causal relationship to [defendant's] act or omission were not discovered and could not reasonably have been discovered." N.H. Rev. Stat. Ann. 508:4 I (emphasis supplied).

If his interpretation of New Hampshire's discovery rule is correct, Emery's addition of Test-Rite Taiwan as a defendant was accomplished within the limitations period. For purposes of this discussion, however, the court has assumed that the limitations period was not tolled and Emery's amended complaint against Test-Rite Taiwan was filed after the limitations period lapsed.

"When a plaintiff amends a complaint to add a defendant, but the plaintiff does so <u>subsequent</u> to the running of the relevant statute of limitations, then Rule 15(c)(3) controls whether the amended complaint may 'relate back' to the filing of the original complaint and thereby escape a timeliness objection." <u>Wilson v. U.S. Government</u>, 23 F.3d 559, 562 (1st Cir. 1994) (emphasis in original). <u>See also</u> <u>Leonard v. Parry</u>, 219 F.3d 25 (1st Cir. 2000). The relevant portions of Rule 15(c) provide as follows:

> **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when . . . .
>
> (2)   the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3)   the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).

13

Thus, in order to avail himself of the protections afforded by Rule 15(c)(3) and pursue his claims against Test-Rite Taiwan in this action, Emery must demonstrate three things: first, that the claims against Test-Rite Taiwan "arose out of the conduct" set forth in the original complaint against Test-Rite International Co., Ltd. (U.S.) and Test-Rite Product Corp.; second, that, within 120 days of the filing of the original complaint, Test-Rite Taiwan had such notice of the institution of the action against it that it would not be prejudiced in maintaining a defense;[2] and, finally, that Test-Rite Taiwan knew or should have known that, but for a mistake concerning the naming of the domestic Test-Rite corporations as defendants in the original complaint, it would have been named as defendant.

As to the first element - same underlying transaction - there is no dispute that it is plainly met. With regard to the

_____

[2] In this case, the default period of 120 days provided by Rule 4(m) applies, since Emery did not seek nor did the court sua sponte grant him additional time to make service upon the original defendants. And, contrary to Emery's representations, Rule 4(m) does apply to service upon foreign corporations. See Fed. R. Civ. P. 4(m) (excluding from its scope service in a foreign country upon an individual and state or political subdivisions, but not excluding service upon foreign corporations). See also J.M. Wagstaffe, Federal Civil Procedure, para. 5:259 (2000) ("Compare - service on foreign corporations: Note that service on foreign corporations is not excluded from the 120-day time limit.") (emphasis in original).

14

notice requirement, Emery does not seriously advance any argument that Test-Rite Taiwan received actual notice of his claims 120 days of his filing suit against the domestic Test-Rite entities.[3] Instead, he claims that because Test-Rite Taiwan and the domestic Test-Rite entities are so closely related, the court may infer that Test-Rite Taiwan received notice of this suit when the domestic Test-Rite entities were served. Although Emery cites no authority to support his assertion, he is, presumably, relying on the "identity of interest" exception to Rule 15's notice requirement. See generally Schiavone v. Fortune, a/k/a Time, Inc., 477 U.S. 21, 28 (1986); Hernandez Jimenez v. Calero Toledo, 604 F.2d 99, 102-03 (1st Cir. 1979). As the court of appeals for this circuit has observed:

> The identity of interests concept, a judicial gloss on Rule 15(c)(1), provides that the institution of the action serves as constructive notice of the action to the parties added after the limitations period expired, when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced.

---

[3] Emery does say that Test-Rite Taiwan received actual notice of the suit when he first attempted to serve it with a copy of the complaint and summons. Importantly, however, those efforts to serve Test-Rite Taiwan were undertaken more than 120 days after Emery filed suit against the domestic Test-Rite entities. Consequently, they did not provide Test-Rite Taiwan with timely notice, as required by Rule 15(c), of this proceeding.

15

<u>Hernandez Jimenez</u>, 604 F.2d at 102-03 (citing 6 Wright & Miller, Federal Practice & Procedure § 1499 at 518-19; 3 Moore's Federal Practice, para. 15.15(4-2) at 15-231 n.15). <u>See also</u> J.M. Wagstaffe, <u>supra</u>, at para. 8:474 ("Imputed notice: If there is sufficient agency or community of interest between the person served and the intended defendant, notice may be imputed to the intended defendant.").

On this record, the court is persuaded that Test-Rite Taiwan and the domestic Test-Rite entities share a community of interests and are sufficiently related to warrant application of the "identity of interest" principle. As noted above, Test-Rite Taiwan owns what appears to be a controlling interest in the domestic holding company operating under the identical name. That company, in turn, apparently has a single function: it holds the stock of Test-Rite Product Corp. And, aside from directly controlling one of the domestic Test-Rite entities and indirectly controlling the other, Test-Rite Taiwan has a direct business relationship with one of those defendants: it sells products to Test-Rite Product Corp. for resale in the United States. Consequently, as a result of Test-Rite Taiwan's substantial ownership interest in Test-Rite International Co., Ltd. (U.S.)

16

and its close and ongoing relationship with Test-Rite Product Corp., it is reasonable to presume that it received notice of this suit shortly after the complaint and summons were served on those domestic corporations. The second element of Rule 15(c) is, therefore, met.

Finally, assuming Test-Rite Taiwan had actual or, at a minimum, constructive knowledge of this proceeding shortly after the related domestic entities were served, it is also reasonable to presume that it knew or should have known that, but for a mistake concerning the identity of the proper party, it would have been named as one of the original defendants. Emery's complaint against the domestic Test-Rite entities plainly seeks to impose liability on those responsible for the design, manufacture, distribution, and/or sale of the voltage meter in question. In fact, it named as one of the defendants a corporation that bears the same name as Test-Rite Taiwan: the domestic holding company. And, according to Emery's amended complaint, Test-Rite Taiwan was directly involved in the distribution of the allegedly defective product in the United States and, in particular, the State of New Hampshire. Accordingly, it is reasonable to presume that, upon learning of Emery's suit, Test-Rite Taiwan knew or should have know that the

17

original action would have been brought against it, but for Emery's mistake concerning the identically named domestic Test-Rite entity. See generally Leonard, 219 F.3d at 28.

In light of the foregoing, the court concludes that each of the essential elements of Rule 15(c) has been met and Emery's amended complaint against Test-Rite Taiwan relates back to the date on which he filed his timely claims against the domestic Test-Rite entities. Consequently, the court need not address Emery's claim that the New Hampshire statute of limitations was tolled until he received (from the Fire Marshall) the voltage meter in question and was able to subject it to scientific testing.

## Conclusion

The means by which Emery served Test-Rite Taiwan with a copy of the summons and complaint in this proceedings complied with the requirements of federal law.

As to the question of personal jurisdiction over Test-Rite Taiwan, the court concludes that Emery has made a prima facie showing that the exercise of such jurisdiction is reasonable and proper. And, finally, the court concludes that Rule 15(c)

18

applies to the circumstances of this case. Consequently, although it was (arguably) filed after the expiration of the applicable statute of limitations, Emery's amended complaint against Test-Rite Taiwan relates back to the date on which he filed his timely claims against the domestic Test-Rite entities. Test-Rite Taiwan's motion to quash service and to dismiss plaintiff's amended complaint (document no. 56) is, therefore, denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August    , 2001

cc: Scott A. Ewing, Esq.
    Richard E. Mills, Esq.
    Douglas J. Miller, Esq.
    David L. Weinstein, Esq.