# United States Court of Appeals
## For the First Circuit

No. 99-2107

MITCHELL LEONARD,

Plaintiff, Appellant,

v.

KAY PARRY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Lipez, Circuit Judge.

Arend R. Tensen, with whom Van Dorn, Cullenberg, Tensen & Curtiss, PLLC was on brief, for appellant.
John A. Curran, with whom Jill A. DeMello and Getman, Stacey, Tamposi, Schulthess & Steere, P.A. were on brief, for appellee.

July 17, 2000

**SELYA, Circuit Judge.** This appeal asks whether, under particular circumstances, an amendment adding a party after the expiration of the statute of limitations relates back to the date on which the plaintiff commenced the action. Although a straightforward reading of Federal Rule of Civil Procedure 15(c)(3) seems to require an affirmative answer to this question, a doubt lingers because some courts, spurred by a mischievous bit of dictum, have glossed the text of the rule. Resisting the temptation to read more into Rule 15(c)(3) than its unvarnished language implies, we hold that the attempted amendment "relates back," and, accordingly, we reverse the district court's order of dismissal.

## I. BACKGROUND

The seeds of this controversy were sown in Lebanon, New Hampshire, on February 28, 1995, when a Jeep owned by Maureen Boulanger and operated by Kay Parry collided with a car driven by Mitchell Leonard. Leonard and his minor child, Jade, sustained injuries. Since Raymond Boulanger (Maureen's husband) had arranged for insurance on the Jeep, the Leonards' attorney contacted the carrier with a view toward settlement of the personal injury claims.

These negotiations bore some fruit: the parties agreed to resolve Jade Leonard's claim for a sum certain. They

-3-

prepared a settlement agreement and, in accordance with local custom, submitted it for approval in a New Hampshire state court on January 26, 1998.  Significantly, the agreement and the petition in the concomitant "friendly suit" — both of which were drafted by a lawyer representing the insurer — named only the policyholder, Raymond Boulanger, as a defendant and misdescribed him as the operator of the Jeep.  A state court judge approved the settlement on February 18.

Mindful of New Hampshire's three-year statute of limitations for personal injury claims, see N.H. Rev. Stat. Ann. § 508:4(I), Leonard filed suit on January 27, 1998, to recover for his own injuries.  Remarking the existence of diversity jurisdiction, see 28 U.S.C. § 1332(a), he chose a federal forum. Emulating the petition in Jade's case, his complaint incorrectly named Boulanger as the driver and sole defendant.

After the summons and complaint had been served, defense counsel awoke to the confusion over the driver's identity.  On February 13, he called Leonard's lawyer and shared this epiphany with the lawyer's secretary.  On the same date, he wrote to the lawyer advising that the papers memorializing the Jade Leonard settlement would have to be revised to release the proper defendants.  Despite these contacts, Leonard took no

further action in respect to his case within the limitations period.

The statute of limitations ran on February 28, 1998. A few days later, Boulanger — a Massachusetts resident — moved to dismiss Leonard's suit for lack of in personam jurisdiction. Leonard conceded the jurisdictional point, but moved to amend the complaint by substituting Parry as the defendant. The district court granted the motion to amend without prejudice, simultaneously dismissing the action as to Boulanger.

Leonard served Parry on May 25. She moved to dismiss, claiming that she had been sued too late. The district court agreed. See Leonard v. Parry, No. 98-42, slip op. (D.N.H. July 22, 1999). Following an unsuccessful motion for reconsideration, Leonard prosecuted this appeal.

## II. ANALYSIS

Because Leonard amended his complaint to substitute Parry for Boulanger after the statute of limitations expired, his appeal turns on whether this modification "related back" to the inception of the action. The touchstone for such an inquiry is Rule 15(c)(3). It provides that an amendment which changes the party or the naming of the party against whom a claim is asserted relates back to the date of the original complaint if — and only if — the claim or defense asserted in the amended

-5-

pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading and,

> within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c)(3).

As written, Rule 15(c)(3) has three requirements. The first (same transaction) clearly is satisfied here: both the original and the amended complaints derive from precisely the same conduct. So, too, the second requirement (timely notice): Parry concedes that Leonard served her within the 120-day default period prescribed by Rule 4(m).[1]

This leaves only the third requirement: knowledge of a mistake in identity. To satisfy this criterion, the amendment's proponent must show not only that he made a mistake

_____

[1]Parry advances some vague ruminations about prejudice — but these are sound and fury, signifying nothing of legal consequence. We fail to see how there could be prejudice from letter-perfect service of process within the default period. In any event, it strains credulity to argue that Parry somehow was unfairly harmed by the small incremental delay in receiving notice. See Leonard, slip op. at 7 (dismissing Parry's suggestion of prejudice).

-6-

anent the proper party's identity, but also that the later-named party, within the prescribed time limit, knew or should have known that, but for this mistake, the action would have been brought against her.

In this instance, it is plain from the face of the original complaint — which erroneously stated that Boulanger was driving at the time of the accident — that Leonard made a mistake concerning the identity of the proper party defendant. See generally Webster's Ninth New Collegiate Dictionary 760 (1983) (defining "mistake" as "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"). By like token, this blunder alone explained Leonard's failure to sue Parry in the first place.[2] Thus, Parry — who knew to a certainty that she, not Boulanger, had been operating the Jeep when the accident occurred — knew or should have known from the moment she was served with the amended complaint that the action originally would have been brought against her but for the mistake about who was driving. Consequently, all the requirements of Rule 15(c)(3) were

---

[2]The district court suggested that Leonard might have intentionally opted to sue Boulanger on a theory of negligent entrustment (or so Parry could have thought). See Leonard, slip op. at 7 n.3. This speculation is conclusively refuted by the fact that both the original and amended complaints were predicated exclusively on allegations of the driver's negligence in the operation of the motor vehicle.

-7-

satisfied, the amendment related back to the date of the original filing, and Parry's limitations defense should have been rejected.

The district court, however, found to the contrary. It elected to go beyond the plain language of Rule 15(c)(3), theorizing that "if a plaintiff knew (or, through the exercise of reasonable diligence, could have known) the identity of the proper defendant within the pertinent limitations period, but waited until after that period lapsed before seeking to add that defendant, he cannot avail himself of the protections of Rule 15(c)." Leonard, slip op. at 10. Applying this premise, the court concluded that Leonard's "mistake" did not come within the rule. See id. at 11-14.

The court's premise is unsound, and its conclusion is therefore unfounded. Virtually by definition, every mistake involves an element of negligence, carelessness, or fault — and the language of Rule 15(c)(3) does not distinguish among types of mistakes concerning identity. Properly construed, the rule encompasses both mistakes that were easily avoidable and those that were serendipitous. The examples assembled by the advisory committee — e.g., the naming of a nonexistent federal agency or a retired officer, see Fed. R. Civ. P. 15 advisory committee's note (1966 Amendment) — confirm this construction. The drafters

-8-

believed that such errors would trigger Rule 15(c)(3) notwithstanding that reasonable diligence almost always would prevent them from occurring.

We need not belabor the point. Rule 15(c)(3) requires courts to ponder whether, in a counterfactual error-free world, the action would have been brought against the proper party, not whether the action should have been amended subsequently to include that party. See Fed. R. Civ. P. 15 advisory committee's note (1966 Amendment) (explaining that the appropriate question is whether the proper party "knew or should have known that the action would have been brought against him initially had there not been a mistake concerning [identity]" (emphasis supplied)). Thus, what the plaintiff knew (or thought he knew) at the time of the original pleading generally is the relevant datum in respect to the question of whether a mistake concerning identity actually took place. See, e.g., Wells v. HBO & Co., 813 F. Supp. 1561, 1567 (N.D. Ga. 1992) ("[E]ven the most liberal interpretation of 'mistake' cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset."). What the plaintiff learned later, however, cannot be relevant for this purpose.

We say "for this purpose" because, even though evaluating the existence of a plaintiff's mistake in light of

subsequently acquired knowledge is flatly inconsistent with the language of Rule 15(c)(3), post-filing events occasionally can shed light on the plaintiff's state of mind at an earlier time. Cf. United States v. Mena, 933 F.2d 19, 25 n.5 (1st Cir. 1991) (explaining that events which occur after an incident may bear on an assessment of an actor's state of mind at an earlier time). Morever, such events can inform a defendant's reasonable beliefs concerning whether her omission from the original complaint represented a mistake (as opposed to a conscious choice). See Kilkenny v. Arco Marine Inc., 800 F.2d 853, 857 (9th Cir. 1986) ("A plaintiff's failure to amend its complaint to add a defendant after being notified of a mistake concerning the identity of a proper party . . . may cause the unnamed party to conclude that it was not named because of strategic reasons rather than as a result of the plaintiff's mistake.").[3] We limit our holding accordingly: knowledge acquired by a plaintiff

---

[3]Kilkenny's original complaint targeted the wrong defendant. With the limitations period still open, the named defendant answered the complaint, stating exactly the correct defendants' identities. Kilkenny demonstrated her appreciation of this fact by including these new defendants in a second suit, but did not attempt to amend her complaint in her initial action for over two years (at which point the statute of limitations had run). See 800 F.2d at 854-55. No such exaggerated fact pattern exists here: Leonard's conduct after filing the original complaint, though lackadaisical, could not have led Parry to believe that she was omitted from that complaint for any reason other than his mistake.

after filing his original complaint is without weight in determining his state of mind at the time he filed the initial complaint and, thus, in determining whether a mistake concerning identity occurred. See id. at 856.

There are two other matters that deserve comment. The first relates to how an able district judge was led astray. In support of its critical premise, the court relied heavily on Kilkenny,[4] a case which, as indicated above, supports a literal reading of Rule 15(c)(3). Nevertheless, although reaching a defensible conclusion, the Kilkenny court gratuitously stated that "Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party." 800 F.2d at 857-58. This mischievous bit of dictum, which understandably misled not only the court below but also several other district courts, see, e.g., Brink v. First Credit Resources, 57 F. Supp. 2d 848, 856-57 (D. Ariz. 1999); Sims v. Montgomery County Comm'n, 873 F. Supp. 585, 611-12 (M.D. Ala. 1994); Potts v. Allis-Chalmers Corp., 118 F.R.D. 597, 608-09 (N.D. Ind. 1987), is simply wrong. Under the clear language of Rule 15(c), post-filing events (including inaction

---

[4]The court also drew support from Pessotti v. Eagle Manufacturing Co., 946 F.2d 974 (1st Cir. 1991). Pessotti requires no discussion, however, as Rule 15(c) was not at issue there. See id. at 977 n.2.

-11-

in the face of new information) can be relevant only to the extent that they (a) shed light upon the plaintiff's state of mind when he filed the original complaint, or (b) inform an added party's reasonable belief concerning the cause of her omission from that complaint.

To be sure, there is an explanation for the Kilkenny dictum. When no responsive pleading has been filed, a plaintiff can amend his complaint once without first obtaining leave of court and, as long as the requirements of Rule 15(c) are met, relation back is automatic. But when, as in Kilkenny, the defendants have served responsive pleadings, an amended complaint can be filed "only by leave of the court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). What the plaintiff knew or should have known and what he did or should have done are relevant to the question of whether justice requires leave to amend under this discretionary provision. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962) (explaining that "undue delay" can justify denial of leave to amend under Rule 15(a)). We think it likely that a blurring between the 15(a) and 15(c) inquiries explains the errant language in Kilkenny.[5]

---

[5]Indeed, a leading treatise has foreshadowed this explanation:

In all events, the origin of the <u>Kilkenny</u> dictum is mostly a matter of academic interest here. In this case, no responsive pleading had been filed, and the district court therefore lacked discretion to deny Leonard's proposed amendment. <u>See</u> Fed. R. Civ. P. 15(a) (stipulating that a "party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served"); <u>Dartmouth Review</u> v. <u>Dartmouth College</u>, 889 F.2d 13, 22 (1st Cir. 1989) (holding that a motion to dismiss does not qualify as a responsive pleading for Rule 15(a) purposes). In addition, everything that we can glean about Leonard's knowledge at the time he filed his original complaint indicates that he named Boulanger instead of Parry on the patently erroneous assumption that Boulanger was the driver. There is no reason to think that this bevue,

> A few cases tend to suggest that if plaintiff's own inexcusable neglect was responsible for the failure to name the correct party, an amendment substituting the proper party will not be allowed, notwithstanding adequate notice to the new party. Although this factor is germane to the question of permitting an amendment, it is more closely related to the trial court's exercise of discretion under Rule 15(a) whether to allow the change than it is to the satisfaction of the notice requirements of Rule 15(c).

6A Charles Alan Wright et al., <u>Federal Practice & Procedure</u> § 1498, at 142-43 (2d ed. 1990) (footnotes omitted). Courts' tendency to collapse the two inquiries in cases of misidentification is understandable because the parties to be added, by definition, are not present to argue their position when the plaintiff initially seeks leave to amend.

however careless, was anything but an honest mistake concerning identity.

The final matter we must mention relates to a decision of this court, <u>Wilson</u> v. <u>United States Government</u>, 23 F.3d 559, 563 (1st Cir. 1994), not adequately discussed by the parties or the district court. Following injuries sustained during a stranding at sea aboard a vessel owned by the United States Navy, Wilson chose to sue his employer, General Electric Government Services (GEGS), under the Jones Act, 46 U.S.C. § 688. When he belatedly realized that the Jones Act was ineffectual in the circumstances of his case, he attempted to train his sights instead on the United States pursuant to the Public Vessels Act, 46 U.S.C. §§ 781-790, and the Suits in Admiralty Act, 46 U.S.C. §§ 741-752. <u>See</u> <u>Wilson</u>, 23 F.3d at 560. The statute of limitations had run, and the district court repulsed this effort. We affirmed, stating three separate, independently sufficient reasons for rejecting Wilson's argument that his amendment substituting the government should relate back under Rule 15(c)(3): (1) there was no showing that the government had received timely notice; (2) there was no basis for imputing knowledge of a mistake to the government within the prescribed time; and (3) there was no mistake concerning identity within the meaning of the rule. <u>See</u> <u>id.</u> at 562-63. We explained the third reason as follows:

> In this case, there was no "mistake concerning the identity of the proper party," as required by Rule 15(c)(3). Rather, Wilson merely lacked knowledge of the proper party. In other words, Wilson fully intended to sue GEGS, he did so, and GEGS turned out to be the wrong party.

Id. at 563.

At first blush, this statement appears to lend comfort to Parry's position. Any such comfort is illusory. Wilson is not a case in which a plaintiff intended to sue A and sued B by reason of a mistake concerning identity. Rather, it is a case in which the plaintiff chose the wrong theory of liability — the Jones Act — and sued the wrong party. See id. (concluding that "Wilson fully intended to sue GEGS"). We agree with the Wilson court that Rule 15(c)(3) was not designed to remedy a mistake in the selection of a legal theory.[6] See id.; see also Rendall-Speranza v. Nassim, 107 F.3d 913, 917-18 (D.C. Cir. 1997) (rejecting the view that Rule 15(c)(3) applies where "the mistake is one of legal judgment").

## III. CONCLUSION

We need go no further. We construe Rule 15(c)(3) in accordance with its plain meaning. Because Leonard fulfilled all the rule's requirements, his amendment related back to the

---

[6]It would place this case on an even keel with Wilson had Leonard brought a products liability suit against the manufacturer of the Jeep and, after the expiration of the statute of limitations, tried to abandon that quest and amend his complaint to assert a claim against a new defendant (Parry) for negligent operation of the vehicle.

date of his original pleading, and his action was timely. Consequently, the lower court erred in dismissing the amended complaint.

**<u>Reversed and remanded for further proceedings consistent with this opinion</u>**.