**CHRISTOPHER CENTUORI, Plaintiff,**

v.

**EXPERIAN INFORMATION SOLUTIONS, INC., et.al., Defendants.**

**No. CV 04–013–TUC–CKJ.**

United States District Court, D. Arizona.

June 30, 2004.

Floyd W Bybee, Esq., Floyd W. Bybee PLLC, Richard A. Dillenburg, Richard A. Dillenburg, P.C., Tempe, AZ, for Plaintiff.

Timothy Joel Eckstein, Osborn Maledon PA, Phoenix, AZ, Andi Kendrick Wang, Irvine, CA, Stacey A. Roseberry, Michael John Rusing, Esq., Rebecca K. O'Brien, Rusing & Lopez PLLC, Tucson, AZ, Andrew Charles Pacheco, Phoenix, AZ, Christopher Anthony Coury, John Michael Fry, Sean Thomas Hood, Ryley Carlock & Applewhite PA, Phoenix, AZ, for Defendant.

## ORDER

JORGENSON, District Judge.

Pending before the Court is Defendant Merchants Information Solutions' Motion for Summary Judgment (Doc. # 14). In a May 17, 2004 filing, Defendant Merchants Information Solutions withdrew all arguments in its motion other than its time-bar arguments. As set forth below, the Court denies the parties' requests for oral argument, and denies Defendant Merchants Information Solutions' motion.

### Factual & Procedural Background

This action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et. seq. Plaintiff Christopher Centuori alleges, inter alia, that Defendant Merchants Information Solutions ("MIS") violated the FCRA in issuing three reports-two on January 9, 2002 and one on August 6, 2002–to the Pima County Public Defender's Office.

On January 7, 2004, Centuori met with his attorneys, Michael C. Shaw and Floyd W. Bybee, concerning his potential FCRA claims. He brought with him copies of three credit reports-an Experian report dated October 2, 2003; a "tri-merge" report dated January 6, 2004 which included Experian, Trans Union, and Equifax; and a copy of the actual report pulled by the Public Defender's Office on August 6, 2002.

The October 2003 and the January 2004 reports showed that the Pima County Public Defender's Office had accessed Centuori's Experian credit report on January 9, 2002 and August 6, 2002. In addition, the October 2003 report also indicated that the Public Defender had accessed Centuori's credit history in January 2002, but did not give a specific date. Neither the October 2003 nor the January 2004 report indicated that MIS had furnished the report. With respect to the actual August 6, 2002 report that Centuori brought to his counsel, it revealed that it had been obtained via Experian's website at www.experian.com, and contained no indication that it had been obtained through MIS.

Centuori then filed this pending action on January 8, 2004. See Complaint, Doc. # 1. His attorney, Floyd W. Bybee, signed the original Complaint and attached the October 2, 2003 Experian report as Exhibit "A" to that Complaint. See id. Centuori named Experian Information Solutions, Inc ("Experian"); Donald S. Klein; Susan A. Kettlewell; the Law Office of the Pima Public Defender; and Pima County as Defendants. See id. He did not name MIS as a Defendant. See id. The Complaint contained, inter alia, the following relevant allegations:

32. Sometime prior to January 2002 Experian entered into a subscriber contract with the Law Offices of Pima Public Defender wherein the Pima Public Defender was able to access at will credit reports on individuals directly from Experian.

33. At the time Experian and the Pima Public Defender entered into their contract, Experian failed to make a reasonable investigation into the probable use of the credit reports acquired by the Pima Public Defender ....

35. Experian knew or should have known that the stated basis by the

Public Defender of "Collection purpose" was false at the time it furnished Plaintiff's credit report on January 9, 2002.

36. Experian's furnishing of the Public Defender with a copy of Plaintiff's credit bureau on January 9, 2002 was done without a permissible purpose under the FCRA.

*Id.*

After filing his initial Complaint, Centuori, by and through his counsel, continued his additional investigation during which he received some documents from the Pima County Attorney on January 15, 2004. Those newly discovered documents included correspondence between the County Attorney's office and MIS.

Based upon the newly discovered information, Centuori, by and through his counsel Floyd W. Bybee, filed a First Amended Complaint (Doc. # 2) on January 26, 2004 [1] as a matter of right. *See* Rule 15(a), Fed. R.Civ.P. His First Amended Complaint named the original five Defendants *as well as* MIS as an additional Defendant. *See* Doc. # 2. The allegations in the Amended Complaint reflected Centuori's newly discovered information as reflected in the relevant allegations set forth below:

34. Sometime prior to January 2002 Experian entered into a subscriber contract with the Law Offices of Pima Public Defender wherein the Pima Public Defender was able to access at will credit reports on individuals directly from Experian and / or Merchants.

35. At the time Experian and / or Merchants and the Pima Public Defender entered into their contract, Experian and / or Merchants failed to make a reasonable investigation into the probable use of the credit reports acquired by the Pima Public Defender ....

37. Experian and / or Merchants knew or should have known that the stated basis by the Public Defender of "Collection purpose" was false at the time it furnished Plaintiff's credit report on January 9, 2002.

38. Experian's and / or Merchants' furnishing of the Public Defender with a copy of Plaintiff's credit bureau on January 9, 2002 was done without a permissible purpose under the FCRA.

*Id.*

Thereafter, Centuori served his First Amended Complaint on *all* the Defendants (*see* Docs. # 3–8), and effected service on MIS on February 2, 2004 (Doc. # 7).

### Background on MIS and Experian

MIS is an Arizona non-profit corporation which, at the relevant times, operated as a consumer reporting agency and used the trade name Credit Data Southwest. MIS owned a credit information database on individuals living in certain zipcodes, including much of Arizona. MIS had a contractual relationship with Experian under which its data relating to Arizona consumers was stored on Experian's computer systems and consumer credit reports were prepared for Arizona residents using Experian's system after incorporating MIS' data. However, MIS and Experian were and are wholly separate and distinct entities. On August 29, 2003, MIS sold its database and its trade name-Credit Data Southwest-to Experian, and no longer is involved in gathering and maintaining credit information about Arizona consumers.

---

**1.** The original First Amended Complaint (Doc. # 2) was file-stamped January 27, 2004 by the Clerk of the Court's office; however, the courtesy copy provided to chambers was file–stamped January 26, 2004 by that same Clerk's office. For the purposes of this motion, this Court will presume that the original was filed the same day as the chamber's copy.

On June 26, 1998, MIS entered into a contractual relationship with the Pima County Public Defender's Office which allowed the Public Defender to obtain Experian credit reports from MIS.

### Discussion

MIS' Motion for Summary Judgment (Doc. # 14) sets forth various arguments; however, several of those arguments were subsequently withdrawn. Nonetheless, Centuori and MIS have fully briefed MIS' time-bar arguments. This Court has reviewed the relevant filings and pertinent authorities, finds that oral arguments would not be helpful, and, thus, denies Centuori's and MIS' requests for oral argument on the motion.

Centuori and MIS agree that the applicable statute of limitations is two years (15 U.S.C. § 1681p), and that the statute of limitations begins to run from the date of the alleged violation and *not* the date of discovery (*TRW, Inc. v. Andrews*, 534 U.S. 19, 23, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)). Thus, Centuori and MIS seemingly agree that Centuori's FCRA claims relating to the two January 9, 2002 reports (the "First and Second Reports")[2] are time-barred unless Centuori's First Amended Complaint, filed on January 26, 2002, relates back to the filing of Centuori's initial Complaint filed on January 8, 2002. Relation back of Centuori's First Amended Complaint is governed by Rule 15(c)(3), Fed.R.Civ.P.

■ While both MIS and Centuori have addressed the Rule 15(c)(3) issue in terms of a motion for summary judgment, this Court believes that this portion of MIS' motion is properly construed as an objection to the relation back of Centuori's amendment. While Centuori's First Amended Complaint was filed as a matter of right since no responsive pleading had been filed (*see* Rule 15(a), Fed.R.Civ.P.), this Court believes that MIS has the right to object to whether that amendment relates back under Rule 15(c), Fed.R.Civ.P. *Leonard v. Parry*, 219 F.3d 25, 29 (1st Cir.2000) ("When no responsive pleading has been filed, a plaintiff can amend his complaint once without first obtaining leave of court and, as long as the requirements of Rule 15(c) are met, relation back is automatic."). The decision of whether Centuori's First Amended Complaint relates back to his original Complaint is committed to this Court's discretion. *Louisiana–Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir.1993) *and Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 856 (9th Cir.1986).

### Rule 15(c)(3) Analysis

■ As set forth below, this Court denies MIS' motion in part because Centuori's First Amended Complaint relates back to the filing of his original Complaint because his failure to name MIS in his original Complaint was the result of a mistake concerning identity, and as such, his FCRA claims arising from the First and Second Report were timely filed.

As it pertains to this case, Rule 15(c)(3) provides that Centuori's First Amended Complaint relates back to his original Complaint if (1) the claim asserted in the First Amended Complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original Complaint; (2) within the time period provided by Rule 4(m) for service of the summons and complaint, MIS (a) re-

---

**2.** MIS has not argued that Centuori's claim arising from the August 6, 2002 report is time-barred as each transmission of a credit report is a separate and distinct tort, to which a separate two-year statute of limitations applies under the FCRA. *See, e.g., Whitesides v. Equifax Credit Info. Svcs., Inc.*, 125 F.Supp.2d 813, 817 (W.D.La.2000).

ceived notice of the institution of the action such that it will not be prejudiced in maintaining a defense on the merits and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. Rule 15(c), Fed.R.Civ.P. *See also Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). MIS' objection to the relation-back of Centuori's First Amended Complaint under Rule 15(c) rests *solely* upon its claim that Centuori did not make a "a mistake concerning the identity of the proper party," and concedes that the remaining requirements have been met. Rule 15(c), Fed.R.Civ.P.

### *Centuori's Failure to Name MIS was the Result of a Mistake Concerning Identity.*

█ As the rationale behind Rule 15(c) is "to ameliorate the effect of the statute of limitations" (Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1497, at 85 (2d ed.1990) (footnote omitted)), "[p]roperly construed, the rule encompasses both mistakes that were easily avoidable and those that were serendipitous." *Leonard v. Parry,* 219 F.3d 25, 29 (1st Cir.2000). A mistake is "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention." *Webster's Ninth New Collegiate Dictionary* 760 (1983) quoted in *Leonard,* 219 F.3d at 28. "Virtually by definition, every mistake involves an element of negligence, carelessness, or fault-and the language of Rule 15(c)(3) does not distinguish among types of mistakes concerning identity." *Leonard,* 219 F.3d at 29.

█ In determining whether Centuori made a mistake concerning identity, the relevant information is what Centuori knew or thought he knew when he filed the original Complaint. *Leonard,* 219 F.3d at 29. *See also Kilkenny v. Arco Marine,*

*Inc.,* 800 F.2d 853, 856 (9th Cir.1986) ("We agree with Kilkenny that the 'would have been brought against him' language of rule 15(c) suggests that our inquiry regarding the existence of a mistake of identity should be limited to her state of mind as of the time the initial complaint was filed."). "[P]ost-filing events (including inaction in the face of new information) can be relevant only to the extent that they (a) shed light upon [Centuori's] state of mind when he filed the original complaint, or (b) inform an added party's reasonable belief concerning the cause of [its] omission from that complaint." *Leonard,* 219 F.3d at 30.

In this case, Centuori claims that he made a mistake concerning identity because he mistakenly thought Experian was the consumer reporting agency that had a contract with the Pima County Public Defender's Office. The factual allegations on the face of his original Complaint support this claim. Obviously, he believed that it was Experian, and not MIS, that had the contract with the Public Defender's Office. Furthermore, the affidavit (Exhibit 2 to Doc. # 21) from Centuori's counsel, Floyd W. Bybee, the drafter of Centuori's original Complaint, support Centuori's claim of mistake as that affidavit reflects that Bybee did not know of MIS' involvement in this matter prior to January 8, 2004 and that if he had known of MIS' involvement, he would have named it as a defendant in the original Complaint. The affidavit also sets forth that Bybee's failure to name MIS was the result of inadvertence and not strategy. *See G.F. Co. v. Pan Ocean Shipping Co., Ltd.,* 23 F.3d 1498, 1504 (9th Cir.1994) (finding that similar statements by plaintiff's counsel confirmed that a mistake had been made concerning identity). Finally, Centuori's quick actions to amend his original Complaint upon receipt of additional information indicating that MIS had a contractual relationship with the

Public Defender's Office also indicates that the failure to name MIS originally was the result of a mistake rather than a strategic legal decision.

In many respects, this case is similar to *William H. McGee & Co. v. M/V Ming Plenty*, 164 F.R.D. 601 (S.D.N.Y.1995). In that case, an insurer sued several shipping companies for damage to machines which had occurred while the machines were in transit from South Korea to New York. *Id.* at 603. While the insurer originally named Kenney Transport, Inc. ("Kenney USA") as a defendant, it realized three months later that it had named the wrong Kenney, dismissed Kenney USA, and filed an amended complaint adding Kenney Transport (Korea) Ltd. ("Kenney Korea"). *Id.* at 603–605. Kenney Korea argued that the insurer's claims were time-barred, and the insurer responded by asserting that its claims against Kenney Korea related back to its original complaint. *Id.* at 604. The insurer's counsel, who drafted the original complaint, avowed that he had misidentified Kenney USA as the proper defendant because (a) the Bill of Lading referred to both Kenney USA and Kenney Korea; (b) the two companies had identical logos; and (c) in a pre-suit letter, Kenney USA referred to Kenney Korea's Bill of Lading as "our" Bill of Lading. *Id.* at 605. The court found the insurer's counsel's allegation of mistake credible and understandable under the circumstances, and recommended that the amended complaint be found to relate back to the original complaint. *Id.*

### Evidence of Bybee's Knowledge of the MIS–Experian Relationship and the July 1, 2003 Notice Do Not Negate a Finding of a Mistake Concerning Identity in this Case.

MIS has submitted various materials that it claims demonstrates that there was no mistake concerning identity made in this case. It has submitted voluminous materials regarding prior knowledge Centuori's counsel, Floyd W. Bybee, had gained from at least eight (8) unrelated cases against and/or involving MIS. Those selected materials from those unrelated cases reveal that Bybee knew (a) of the contractual relationship between MIS and Experian, (b) that "subscribers in Arizona are *usually* MIS members" (Doc. # 27 at p. 8 (emphasis added)), (c) that "the *majority* of Experian's credit reporting activities conducted in Arizona were conducted in conjunction with MIS." (*id.* at p. 6 (emphasis added)); and that Bybee had alleged that MIS is liable for "Experian" credit reports and/or consumer disclosures even though an Experian logo or name is prominently printed on the reports/disclosures and the MIS logo is not printed. In addition, MIS has submitted a July 1, 2003 notice that Credit Data Southwest-a.k.a. MIS-sent to Centuori in which it indicated that it had "received a recent request regarding [his] credit information that d[id] not appear to have been sent directly to [it] by [Centuori]." Exhibit 19 to Doc. # 27. While the notice mentions "Experian" at least six times, it never mentions MIS, other than by MIS's trade name Credit Data Southwest. *Id.* Furthermore, there is no evidence in the record that Bybee, the drafter of Centuori's original Complaint, saw this July 1, 2003 notice prior to drafting the original Complaint.

These documents, however, do not diminish this Court's firm conclusion that Centuori's failure to name MIS in the original Complaint was the result of a mistake concerning identity. At best, these documents demonstrate that Centuori and/or his counsel might have been negligent, careless, or even arguably at fault for not naming MIS as the responsible credit reporting agency in the original Complaint; however, they do *not* show that the failure

to name MIS was a strategic decision and not the result of a mistake concerning identity. *Leonard,* 219 F.3d at 29 (noting that "every mistake involves an element of negligence, carelessness, or fault"). Rather, all indications are that Centuori made a factual mistake as to the proper credit reporting agency, and quickly corrected his mistake upon realizing it.[3]

A very similar case of a plaintiff suing the wrong responsible party as the result of a mistake concerning identity is *Leonard v. Parry,* 219 F.3d 25 (1st Cir.2000). In *Leonard,* Leonard and his minor daughter were involved in an automobile accident and were injured. *Id.* at 27. About a month before the applicable statute of limitations was to run, Leonard's counsel filed a complaint mistakenly naming the owner of the other car as the sole defendant and as the driver of the other car, even though the owner had *not* been the driver of the other car at the time of the accident. *Id.* Prior to the statute running, Leonard's counsel was informed that he had sued the wrong responsible party; however, he did not take any steps to amend his complaint to name the driver, rather than the owner, of the other car until *after* the statute had ran. *Id.* On the driver's motion to dismiss, the district court found Leonard's claim against the driver to be time-barred; however, on appeal, the United States Court of Appeals for the First Circuit reversed. *Id.* at 27–31. As set forth previously in this Order, the First Circuit considered in detail the mistake concerning identity requirement of Rule 15(c)(3), and ultimately concluded that Leonard's amendment related back because his failure to name the other driver was the result of his counsel's "blunder." *Id.* at 29.

Again, even assuming all of MIS' allegations concerning Bybee's and Centuori's knowledge are true, at worst Centuori, by and through his counsel, blundered when he mistakenly named Experian, rather than MIS, as the defendant with a contractual relationship with the Public Defender's Office. There is no indication that the failure to name MIS was anything more than that and was clearly not the result of some strategic decision. If Rule 15(c)(3)'s relation back provision covers the blunder by Leonard's counsel, it must also cover Centuori's mistake.

***Binding Authorities are Unhelpful.***

Binding authority from the United States Court of Appeals for the Ninth Circuit is not overly helpful as the reported Ninth Circuit cases are either factually distinguishable or do not discuss the Rule 15(c)(3) requirement in dispute.

For example, in *Louisiana–Pac. Corp. v. ASARCO, Inc.,* 5 F.3d 431 (9th Cir.1993), ASARCO filed a third-party complaint for contribution or indemnity against L–Bar Products, Inc., alleging L–Bar to be the successor in interest to IMP, and only later added IMP as an additional third-party defendant. *Id.* at 433. Both the district court and the Ninth Circuit ruled that Rule 15(c) requirement was not met because ASARCO had *not* made a mistake. Rather, both those courts found that, at the time the third-party complaint was filed, "ASARCO knew perfectly well that IMP was the party who had bought and resold the slag ... [and that] IMP was the party for whose actions it sought indemnity. There was no mistake of identity, but rather a conscious choice of whom to sue." *Id.* at 434. However, in this pending case, Centuori, by and through his counsel, in-

---

**3.** Even though Centuori did not substitute MIS for Experian in his First Amended Complaint out of an abundance of caution, he is not prohibited from invoking the relation back doctrine of Rule 15(c). Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1498, at 126–29 (2d ed.1990).

tended to and thought he was suing the responsible consumer reporting agency that had a contract with the Pima County Public Defender's Office when it named Experian in his original Complaint.

Similarly, *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853 (9th Cir.1986) is of little help. In that case, the Ninth Circuit conceded that the plaintiff "may have been mistaken as to the identity of the proper defendants at the time she filed the original complaint[,]" and focused its attention on what the added defendants knew or should have known during the relevant period. *Id.* at 857. Likewise, *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498 (9th Cir. 1994) is unhelpful as it does not address the mistake concerning identity requirement, but rather only addresses the notice requirement and whether the defendant had reason to believe that the plaintiff had made a mistake (*id.* at 1502–04). As set forth previously, MIS has conceded all Rule 15(c)(3) requirements other than the mistake concerning identity requirement; thus, both *Kilkenny* and *G.F. Company* are unhelpful to this Court's resolution of this case.[4]

Therefore, this Court denies MIS' motion as it finds that Centuori's First Amended Complaint relates back to the filing of his original Complaint because his failure to name MIS in his original Complaint was the result of a mistake concerning identity, and as such, his FCRA claims arising from the First and Second Report were timely filed.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Defendant Merchants Information Solutions' Motion for Summary Judgment (Doc. # 14) is DENIED as set forth above.

---

4. MIS has also relied upon Judge Silver's decision in *Brink v. First Credit Resources*, 57 F.Supp.2d 848 (D.Ariz.1999). While this Court is not bound to follow *Brink*, the result reached by Judge Silver and by this Court are similar because, as the plaintiff in *Brink*, Centuori did not make a "conscious choice" to exclude MIS in his original complaint. *Id.* at 858.