**Paul J. LYNCH, Plaintiff,**

v.

**MASSACHUSETTS STATE SENATE, Defendant.**

**Civil Action No. 06–10611–JLT.**

United States District Court, D. Massachusetts.

July 9, 2007.

Mitchell J. Notis, Annenberg & Levine, LLC, Brookline, MA, for Plaintiff.

Hugh Dun Rappaport, Krokidas & Bluestein, Boston, MA, for Defendant.

## MEMORANDUM

TAURO, District Judge.

### Background

Plaintiff was discharged from his job with the Massachusetts State Senate ("State Senate") in September 2003. On November 21, 2003, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), claiming age discrimination. Plaintiff received an EEOC Notice, on January 10, 2006, advising him of his right to file suit within 90 days. Plaintiff filed this case on April 7, 2006, alleging a claim under Title VII of the Civil Rights Act of 1964 and a claim under state anti-discrimination law, M.G.L.

ch. 151B. Realizing that Title VII does not prohibit discrimination on the basis of age,[1] Plaintiff filed his First Amended Complaint, asserting an Age Discrimination in Employment Act ("ADEA") claim and a Title VII claim for money damages. In his first two complaints, Plaintiff named the State Senate as the Defendant. Plaintiff's *Motion for Leave to File Second Amended Complaint*, asks the court for permission to withdraw Plaintiff's Title VII claim, amend his ADEA claim to seek only injunctive relief, and properly name as a Defendant the President of the State Senate, now Therese Murray.[2]

### Plaintiff's ADEA Claim

■ Plaintiff continues to assert ADEA claims against the State Senate. These claims are barred by the Eleventh Amendment, and are dismissed.[3]

■ Defendant argues that the only federal claim in the Proposed Second Amended Complaint, the ADEA claim against Murray, is barred by the statute of limitations, as more than ninety days elapsed between January 10, 2006, and Plaintiff's filing of his *Motion for Leave to File Second Amended Complaint* on October 6, 2006. But Fed R. Civ. P 15(c)(3) allows an amendment that changes "the party or the naming of the party" to relate back to the filing of an earlier complaint where the amended pleading relates to the same transaction or occurrence,[4] where the new party has timely notice of the institution of the action,[5] and where the new party knew or should have known she

1. See 42 U.S.C. § 2000e–2(a) (2007).

2. Although Plaintiff's Motion seeks leave to assert a claim against Robert Travaglini, the court will assume that Plaintiff now seeks leave to sue the current head of the State Senate, Therese Murray.

3. See *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Rosie D. v. Swift,* 310 F.3d 230, 234 (1st Cir.2002).

4. Fed.R.Civ.P. 15(c)(2).

5. Fed.R.Civ.P. 15(c)(3)(A).

would have been named but for a mistake of identity of the proper party.[6]

Plaintiff has simply been attempting to plead his claim of age discrimination in all three complaints. It is clear, therefore, that the asserted ADEA claim against Murray arises out of the same transaction or occurrence as the underlying claims.

Because Proposed Defendant Murray has substantial identity of interest with Defendant State Senate, it is proper to impute timely notice to Defendant Murray under Fed.R.Civ.P. Rule 15(c)(3)(A). Defendant State Senate argues against this conclusion, relying on a case where the First Circuit refused to accept substitution of the postmaster for the postal service.[7] But the First Circuit's reasoning in that case relied on the superceded Supreme Court case of *Schiavone v. Fortune*,[8] which is no longer good law in light of the 1991 amendments to Federal Rule 15.[9] The Advisory Committee specifically noted that it intended to reverse a number of circuit decisions which refused to allow a plaintiff

to amend its complaint to properly name the head of an agency instead of the agency itself.[10] Under the new language of the rule, service within a limitations period is not required; instead a defendant may be added if he obtains notice sufficient to avoid prejudice within the time allowed for service.[11] Regardless of actual notice, it is proper to impute notice under the identity of interests test because Murray and the State Senate's interests are so intertwined that it makes sense to construe notice to one as notice to another and because adding Murray does not change the facts or issues of the case.[12] Where Defendant State Senate and its principal officers should have expected the pleading to be amended so as to state a valid claim, it is reasonable to hold the notice element to be satisfied.[13]

Finally, as the Defendant would have been immediately aware that the State Senate itself was improperly sued, Potential Defendant Murray, and her counsel at the Attorney General's office, knew or

**6.** Fed.R.Civ.P. 15(c)(3)(B).

**7.** *See Soto v. United States Postal Serv.*, 905 F.2d 537, 539 (1st Cir.1990).

**8.** 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

**9.** *See* Fed.R.Civ.P. 15, advisory committee's note of 1991.

**10.** *Id.*

**11.** *See* Fed.R.Civ.P. 15(c)(3)(A).

**12.** The First Circuit set out the test as follows:

The guideposts for evaluating whether two parties possess a sufficient identity of interest to permit relation back are not well-defined. As to defendants, identity of interest typically means that parties are "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." "The substi-

tution of such parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based." The identity of interest requirement reflects this line of thought; it "ensures that the old and new plaintiffs are sufficiently related so that the new plaintiff was in effect involved in [the proceedings] unofficially from an early stage." *Young v. Lepone*, 305 F.3d 1, 15 (1st Cir.2002) (internal citations omitted).

**13.** *See Cholopy v. City of Providence*, 228 F.R.D. 412, 416 (D.R.I.2005) ("In determining whether a party added by amendment has received constructive notice for Rule 15(c) purposes, the appropriate question for the reviewing court is whether the new party, as viewed from the standpoint of a reasonably prudent person, 'should have expected that the original pleading might be altered or called into question.'") (quoting *LaCedra v. Donald W. Wyatt Det. Facility*, 334 F.Supp.2d 114, 129 (D.R.I.2004)).

should have known that a mistake of identity had been made, within the meaning of Fed.R.Civ.P. 15(c)(3)(B). Defendant argues against this conclusion by noting that in *Wilson v. United States*, the First Circuit noted that a legal error by the Plaintiff did not trigger a right to import a new party under Rule 15(c)(3).[14] But in that case, the plaintiff attempted to sue an entirely different organization (the United States instead of his private employer) under an entirely different legal theory.[15] Defendant argues that Plaintiff similarly chose the wrong theory of liability in this case. In contrast, Plaintiff is not altering legal strategies, but is simply seeking to substitute a party that should have been named according to the basic theory of age discrimination broadly enunciated in the first complaint.

In another First Circuit case, *Leonard v. Parry*, where plaintiff made a mistake of fact concerning who was driving a car that injured the Plaintiff, the court adopted a much more liberal approach, allowed re-pleading, and noted that Rule 15 "does not distinguish among types of mistakes concerning identity." [16] Neither *Wilson* nor *Leonard* is directly on point. Plaintiff's request to re-plead is based on neither a change in underlying legal theory (which *Wilson* says would not relate back) or a mistake of fact (which *Leonard* holds would related back). Instead, Plaintiff simply made the legal mistake of suing the state institution instead of its officer.[17] As Plaintiff is not trying to change theories or gain strategic advantage, but rather correct a legal mistake, allowing Plaintiff's motion is the better course.[18] Other persuasive precedent also supports this conclusion.[19] Accordingly, the court finds Plaintiff may amend his complaint to advance an ADEA claim against Murray.

### Plaintiff's Ch. 151B claim

▮ Plaintiff also seeks money damages and injunctive relief under state anti-

---

**14.** 23 F.3d 559, 563 (1st Cir.1994).

**15.** *Id.* ("In other words, Wilson fully intended to sue GEGS, he did so, and GEGS turned out to be the wrong party."). Defendant would analogize that here, Plaintiff intended to sue the State Senate, did so, and only later realized that its decision-maker, not the State Senate, was the proper party. But this analogy is flawed. Wilson changed his Defendant from GERS to the United Stated because he decided to advance a new legal theory. Plaintiff has consistently attempted to sue the decision-maker at the State Senate who Plaintiff alleges engaged in age discrimination. In this way, allowing Plaintiff to amend the complaint allows him to sue the party he intended under the legal theory that he intended.

**16.** 219 F.3d 25, 29 (1st Cir.2000).

**17.** This court has the authority to objectively weigh the totality of the circumstances in determining whether there has, as a factual matter, been a mistake of identity, within the meaning of Fed.R.Civ.P. 15(c)(3)(B). *LaCedra,* 334 F.Supp.2d at 133.

**18.** *See* 3–15 James Wm. Moore et al., *Moore's Federal Practice* § 15.19[3][d] (2007) (noting that a broad view of the mistake requirement is "better-reasoned").

**19.** *Cholopy,* 228 F.R.D. at 417 ("Instead, a mistake for purposes of Rule 15(c)(3) only occurs when a plaintiff uses one name intending and thinking to sue one entity, when in fact he should have used a different name."). Here Plaintiff intends to sue the relevant decision-maker at the State Senate on a claim of age discrimination. The need to amend derives from the fact he used one name ("The State Senate") when he should have used another ("Travaglini," now "Murray").

*See also King v. One Unknown Fed. Corr. Officer,* 201 F.3d 910, 914 (7th Cir.2000) ("King has not satisfied this mistake requirement. King did not mistakenly sue the wrong party. Nor did he mistakenly sue the BOP instead of suing an individual BOP officer. Rather, King had (and still has) 'a simple lack of knowledge of the identity of the proper party.' ").

discrimination law, MGL ch. 151B, § 4, against Murray and the State Senate. Although there is supplemental jurisdiction over these claims, the court must determine if the Eleventh Amendment bars the exercise of this jurisdiction.[20] Specifically, the Eleventh Amendment prohibits federal courts from hearing cases brought against states or their officers under state law.[21] This prohibition may be lifted if the relevant state law contains a provision specifically authorizing suit against the state to proceed in federal court.[22] M.G.L. ch. 151B does not contain such a provision.[23] Accordingly, the court must dismiss the state claim without prejudice.[24]

### Conclusion

Plaintiff's *Motion to File Second Amended Complaint* is ALLOWED IN PART AND DENIED IN PART. Plaintiff may file a Second Amended Complaint naming Theresa Murray as the Defendant and advancing a single count for injunctive relief under the ADEA. This Second Amended Complaint will relate back to the first Complaint, within the meaning of Fed.R.Civ.P. 15(c)(3). Plaintiff's state law claims are barred from proceeding in federal court.

AN ORDER WILL ISSUE.

20. *Rivera v. Commonwealth,* 16 F.Supp.2d 84, 87 (D.Mass.1998) (" 'In sum, . . . neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment.' ") (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 120–21, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

The fact that *Pennhurst* was decided before the 1990 codification of the supplemental jurisdiction statute does not change this result. *Raygor v. Regents of the Univ. of Minn.,* 534 U.S. 533, 542, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002) (finding 28 U.S.C. § 1367(a) to be a general grant of jurisdiction that does not specifically abrogate sovereign immunity).

21. *Pennhurst,* 465 U.S. at 120, 104 S.Ct. 900.

22. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 237, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) ("Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. . . . Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court."), *superceded on other grounds by* 42 U.S.C. § 2000d–7. *See also Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.,* 991 F.2d 935, 938 (1st Cir. 1993) (laying out four exceptions to Eleventh Amendment protection).

23. *Marsolais v. Mass.,* No. 98–11709, 2002 WL 373305, at *3–4, 2002 U.S. Dist. LEXIS 3991, at *10 (D.Mass. Mar. 7, 2002) (Woodlock, J.) (dismissing Ch. 151B claims for the same reason).

24. 28 U.S.C. § 1367(d) does not toll the running of a statute of limitations for claims barred by the Eleventh Amendment. *Raygor,* 534 U.S. at 548, 122 S.Ct. 999. As a result, Plaintiff will likely be unable to assert his claim in state court. The court realizes that dismissing the state claim without prejudice will actually serve to extinguish Plaintiff's only claim for money damages. But the Eleventh Amendment serves as conclusive bar to allowing the state claim to remain in federal court, and dismissal is the only correct course.