BOLIN, Justice.
Novus Utilities, Inc. (hereinafter “No-vus”), seeks a writ of mandamus directing the Cullman Circuit Court to dismiss negligence and private-nuisance claims against it as time-barred.

Facts and Procedural History

On June 20, 2008, 11 property owners residing in Cullman County sued the Hanceville Water Works & Sewer Board (hereinafter “the Board”), Sally Alexander (individually and in her capacity as coman-ager of the Board), and Southwest Water Company (hereinafter “Southwest”), alleging that the defendants had allowed approximately two million gallons of untreated raw sewage from the sewage-treatment facility operated by the Board to be discharged into waterways in Cullman County. They alleged that beginning in January 2008, and specifically on January 21, 30, and 31, 2008, the sewage-treatment facility released the untreated raw sewage. The property owners alleged that Southwest “participated in the operation and maintenance” of the sewage-treatment facility and that Southwest gave “advice on the use, operation, and maintenance” of the facility, along with “installing and maintaining equipment” for the facility.
The property owners alleged that the release of the untreated raw sewage created a health hazard and that it damaged and devalued their property. In their complaint, the property owners stated that the defendants had a permit from the Alabama Department of Environmental Management (hereinafter “ADEM”) to discharge treated sewage into the waterways but that the permit did not allow the dumping of untreated raw sewage into the waterways. The property owners also stated that ADEM had sued the defendants for violating the terms of the permit, after warning the defendants that dumping raw sewage was a violation of the permit. The property owners alleged negligence, private nuisance, wantonness, and trespass, and they sought compensatory and punitive damages. They also sought in-junctive relief to prevent the further release of raw sewage into the waterways and to require the defendants to handle raw sewage in compliance with state and federal laws.
On July 25, 2008, the property owners filed their first amended complaint, adding ADL, Inc., and Clearwater Solutions, LLC, as defendants. The property owners alleged that ADL and Clearwater, along with Southwest, participated in operating and maintaining the sewage-treatment facility and installed equipment and gave the Board advice and assistance in *991 the operation of the facility. On August 12, 2009, two additional property owners were added as plaintiffs.
In response to certain discovery requests, documents were produced that indicated that Southwest and Novus share the same physical address, telephone number, and facsimile number. A letter from Novus to ADL dated July 2007 is signed by Grady Parsons as an employee of No-vus. That letter is on Novus letterhead and has a Birmingham address. A letter from Southwest to ADL dated February 2008 is signed by Grady Parsons as an employee of Southwest. The letterhead shows “Southwest Water Company formerly Novus Utilities, Inc.” (Emphasis added.) A letter to ADL from Southwest dated April 2008 is signed by Grady Parsons as an employee of Southwest. That letter indicates that Southwest has the same address in Birmingham as Novus as well as the same telephone numbers. Minutes from meetings of the Board produced during discovery refer to Novus as providing a wastewater-facility-analysis report in November and December 2007. In the minutes from a February 2008 meeting, Grady Parsons, representing Southwest, gave the report on the sewage-treatment facility.
In response to interrogatories by the property owners, Southwest made several responses on behalf of, or as, Novus:
“1. Please provide copies of any contracts Defendant has had 'with the Hanceville Water Works & Sewer Board (hereinafter referred to as the ‘Board’) and with any of the other defendants in this case. (When the word ‘plant’ is used herein, it is referring to the actual treatment plant including the collection system).
“RESPONSE: Southwest objects to Request No. 1 on the basis it is overly broad and not reasonably limited in time and/or scope. Subject to and without waiving its objections, Southwest responds as follows: A copy of the agreement between Novus and ADL dated October 8, 2007 is attached.
“2. Please provide Defendant’s operator’s logs for the time it operated or was associated with the Board and/or plant.
“RESPONSE: Southwest objects to Request No. 2 on the basis it is vague and ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of .admissible evidence, and not reasonably limited in time and/or scope. Subject to and without waiving its objections, Southwest responds as follows: Southwest has not operated the Plant since October 16, 2003 and since that date has been under no obligation to maintain operator’s logs for the Hanceville Plant.
“3. Please provide the names of employees of Defendant that worked at the plant or were associated with the plant.
“RESPONSE: Southwest objects to Request No. 3 on the basis it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not reasonably limited in time and/or scope. Subject to and without waiving its objections, Southwest responds as follows: The following individuals performed services for Novus under its agreement with ADL: Grady Parsons, Lyle Gilli-land, Kenneth Turner, Barrie Livingston, Robert Thornton, and Wes Lamon. Rick Lyle contracted with Novus to provide services for Novus under its subcontract with ADL, but was not an employee of Novus.
[[Image here]]
“7. Please identify any problems or issues Defendant had with the plant and/or Board that prevented Defendant *992 or the Board from complying with laws, regulations, ordinances, or other rules. With respect to each of those problems or issues, state what Defendant tried to do to alleviate those problems, and whether Defendant was able to alleviate those problems. If Defendant was unable to alleviate those problems, state why it was unable to do so. Please provide all documentation evidencing Defendant’s awareness of these problems or issues.
“RESPONSE: Southwest objects to Request .No. 7 on the basis it is vague and ambiguous with respect to the phrase ‘complying with laws, regulations ordinances and other rules,’ overly broad, unduly burdensome, not reasonably limited in time and/or scope, and calls for a legal conclusion. Subject to and without waiving its objections, Southwest responds as follows: Under its subcontract with ADL, Novus’[s] scope of work was limited to providing reporting analysis and operational support services to ADL from October 1, 2007 through April 8, 2008. Novus did not manage, direct or control the operation of the Plant and was not responsible for ensuring the Plant complied with any laws, regulations, ordinances or other rules.
[[Image here]]
“9. Please state how many times Defendant notified ADEM when the plant was out of compliance.
“RESPONSE: Southwest objects to Request No. 9 on the basis it is vague and ambiguous with respect to the phrase ‘out of compliance,’ overly broad, unduly burdensome, and not reasonably limited in time and/or scope. Subject to and without waiving its objections, Southwest responds as follows: Under its subcontract with ADL, Novus’[s] scope of work was limited to providing operational support services to ADL from October 1, 2007 through April 8, 2008. Novus also performed analysis of samples collected at the Plant by employees of the Board and used this analysis to provide data necessary to complete the Discharge Monitoring Reports. The ... Board was responsible for submitting these reports to ADEM.
[[Image here]]
“11. Please state whether Defendant was aware of any policy the Board or the plant had with septic haulers dumping their waste at the plant and state whether Defendant had such a policy. Produce or state those policies. List the septic haulers that dumped at the plant during Defendant’s association with the plant and state what was dumped by those septic haulers and the amount dumped by those septic haulers.
“RESPONSE: Southwest objects to Request No. 11 on the basis it is overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and not reasonably limited in time and/or scope. Subject to and without waiving its objections, Southwest responds as follows: In 2003, Novus recalls the Plant’s manager inquiring about accepting septic waste from various companies. Novus advised the manager that the Plant should not accept waste from outside sources. Novus stopped acting as the contract operator of the Plant after October 16, 2003, and has no knowledge of the Board’s policy regarding accepting waste from outside sources after that time.
“12. How many bypasses of the plant occurred during the time Defendant operated the plant or during the time Defendant was associated with the plant? What were the bypass flow amounts or numbers? How were those numbers *993 calculated? Please provide those calculations.
“RESPONSE: Southwest objects to Request No. 12 on the basis it is vague and ambiguous as to the term ‘bypasses,’ overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and not reasonably limited in time and/or scope. Subject to and without waiving its objections,- Southwest responds as follows: Novus is not aware of any ‘bypasses’ which occurred while Novus was performing reporting analysis and operational support for ADL from October 1, 2007 through April 8, 2008.
[[Image here]]
“24. Please list all treatment chemicals used at the plant during the time Defendant was employed by or associated with the plant. How did Defendant or the plant employees measure the amount of chemicals used at the plant while Defendant was associated with or employed by the plant? Please provide any gauge readings or logs showing the amount of chemicals used per day since 2000.
“RESPONSE: Southwest objects to Request No. 24 on the basis it is vague and ambiguous, overly broad and not reasonably limited in time and/or scope. Subject to and without waiving its objections, Southwest responds as follows: Novus was not responsible for applying or monitoring treatment chemicals used at the Plant under its subcontract with ADL to provide reporting analysis and operational support services from October 1, 2007 through April 8, 2008. No-vus recommended to ADL that the Plant begin adding caustic to the process to improve the alkalinity levels. Novus employees assisted the Plant’s operator in applying the caustic. However, No-vus was not responsible for providing any gauge readings or logs showing the amount of chemicals used.
[[Image here]]
“27. Please produce all correspondence concerning the plant between Defendant and anyone not a defendant in this lawsuit.
“RESPONSE: Southwest objects to Request No. 27 on the basis it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not reasonably limited in time and/or scope, seeks information protected by the attorney work product doctrine, and requires the disclosure of information which is protected by the attorney client privilege. Subject to and without waiving its objections, Southwest responds as follows: Southwest has attached all correspondence related to the services Novus provided under its subcontract with ADL.
[[Image here]]
“30. What was Defendant’s duty at the plant?
“RESPONSE: Southwest objects to Request No. 30 on the basis it is vague and ambiguous, overly broad, not reasonably calculated to lead to the discovery of admissible evidence, not reasonably limited in time and/or scope, and calls for a legal conclusion. Subject to and without waiving its objections, Southwest responds as follows: Under its subcontract -with ADL, Novus’[s] scope of work was limited to providing reporting analysis and operational support services to ADL from October 1, 2007 through April 8, 2008. Novus did not supply the Certified Wastewater Operator which was required by the Plant’s NPDES [National Pollutant Discharge Elimination System] Permit. The scope of Novus’[s] services can be derived from its subcontract with ADL which speaks for itself.
*994 [[Image here]]
“33. How did Defendant’s association or employment with the plant end and what date did it end?
“RESPONSE: Southwest objects to Request No. 33 on the basis it is vague and ambiguous with respect to the term ‘association’ and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Southwest responds as follows: Under its subcontract with ADL, Novus’[s] scope of work was limited to providing reporting analysis and operational support services to ADL from October 1, 2007 through April 8, 2008. Novus has had no further involvement at the Plant after April 8, 2008.”
On February 24, 2011, the property owners filed a motion to amend their complaint to add Novus as a defendant on the ground that Novus is a subsidiary of Southwest. On March 2, 2011, the property owners amended their complaint a third time to add Novus as an additional defendant and realleged all of their claims against Novus. On April 4, 2011, Novus filed a motion to dismiss count one (negligence), count two (private nuisance), count four (wantonness), and count five (injunc-tive relief). In its motion, Novus argued that the property owners’ negligence, private-nuisance, and wantonness claims against it were barred by the applicable two-year statute of limitations. Specifically, Novus argued that the property owners’ claims of negligence, wantonness, and private nuisance expired, at the latest, on June 20, 2010. Novus further argued that the claims did not relate back under Rule 15(c), Ala. R. Civ. P., to the date the original complaint was filed because there were no fictitiously named parties in the property owners’ original complaint. No-vus also argued that the property owners failed to state a claim against it that would entitle them to injunctive relief. Novus did not move to dismiss the property owners’ trespass claim against it.
The property owners responded to No-vus’s motion, arguing that they mistakenly thought that Novus had been bought by and/or had merged with Southwest. The property owners also noted that Southwest’s attorney, who is also Novus’s attorney, used the names of the two companies interchangeably in depositions. The property owners stated that they had recently learned that Novus was an existing subsidiary of Southwest. The property owners argued that Novus will not be prejudiced in maintaining a defense in this case because of its relationship with Southwest and because Novus has a legal position analogous to Southwest’s because the claims against Novus are the same claims as those asserted against Southwest.
Novus responded that the property owners were aware of Novus’s existence and aware that Novus was involved in the operation of the sewage-treatment facility but that they made a deliberate choice not to name Novus in the original complaint. Novus alleged that before filing the complaint the property owners attended meetings where a Novus representative talked about operations at the sewage-treatment facility, that documents presented after the complaint was filed but before the statute of limitations expired showed No-vus’s involvement at the sewage-treatment facility, and that there was no evidence indicating that the entity known as Novus became the entity known as Southwest. Novus also argued that the property owners failed to offer any proof that Novus knew or should have known that it should have been named as a defendant but for a mistake.
The trial court held a hearing on whether the property owners’ third amended complaint related back to the date of filing *995 of the original complaint. On May 20, 2011, the trial court denied Novus’s motion to dismiss. On June 29, 2011, Nows filed this petition for a writ of mandamus, asking this Court to order the Cullman Circuit Court to dismiss the property owners’ negligence and private-nuisance claims against it. Although Novus styled its motion as a motion to dismiss, the trial court had before it materials outside the pleadings, and it did not expressly decline to consider those materials in making its ruling. Therefore, the motion to dismiss was converted into a motion for a summary judgment. Phillips v. AmSouth Bank, 838 So.2d 29, 31 (Ala.2002).
Novus acknowledges that it is not seeking relief as to the property owners’ wantonness and trespass claims and their claim for injunctive relief. Novus contends that those claims are addressed to the conduct of other defendants and that a judgment in its favor on the negligence and private-nuisance claims would be the equivalent of a “dismissal” of Novus. The property owners contend that all five of its claims are expressly directed at Novus.[1]

Standard of Review

“ ‘A writ of mandamus is an extraordinary remedy, and it “will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” ’ ” Ex parte Monsanto Co., 862 So.2d 595, 604 (Ala.2003) (quoting Ex parte Butts, 775 So.2d 173, 176 (Ala.2000), quoting in turn Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)). We note that generally “[t]he fact that a statute of limitations defense is applicable is not a proper basis for issuing a writ of mandamus, due to the availability of a remedy by appeal.” Ex parte Southland Bank, 514 So.2d 954, 955 (Ala.1987). A petition for a writ of mandamus, however, is the proper means to seek review of an order denying a motion to dismiss or for a summary judgment filed by a defendant added after the statute of limitations has run, under Rule 15(c)(3), Ala. R. Civ. P., which governs the relation back of amended complaints when the defendant has received notice of the action so that the defendant will not be prejudiced in maintaining a defense on the merits and the defendant knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the defendant. See, e.g., Ex parte Empire Gas Corp., 559 So.2d 1072 (Ala.1990) (denying petition for writ of mandamus where parent corporation filed a motion to dismiss judgment creditors’ amended complaint in which the judgment creditors sought to add parent corporation as a party under Rule 15(c), Ala. R. Civ. P., and to hold the *996 parent corporation liable for the debts of its subsidiary). See also Ex parte Jackson, 780 So.2d 681 (Ala.2000), Ex parte Snow, 764 So.2d 531 (Ala.1999), and Ex parte Stover, 663 So.2d 948 (Ala.1995).

Analysis

Novus contends that the property owners were aware of its existence and of its role in the operation of the sewage-treatment facility during the time frame to which the complaint relates; nonetheless, it says, the property owners did not name Novus as a defendant in the original complaint. Novus argues that the amendment adding it as a defendant was not proper under Rule 15(c) because, it argues, there was not a “mistake concerning the identity of the proper party” and the property owners provided no evidence indicating that they were operating under a mistake when they filed their original complaint. Novus asserts that the property owners’ contention that they were operating under a mistaken belief that Novus and Southwest had merged is not plausible because the property owners say that they learned about the distinctions between Novus and Southwest from discovery answers filed after their original complaint was filed. Novus argues that the property owners failed to establish that Novus knew or should have known that, but for a mistake regarding its identity, it would have been named as a defendant in the original complaint. Novus contends that if it is not dismissed as a defendant it will be prejudiced by having to maintain a defense at a very late stage in the case, when “the passage of time has inevitably led to faded memories and stale evidence and potential witness loss.”
Rule 15(c) provides, in pertinent part:
“(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
[[Image here]]
“(3) the amendment, other than one naming a party under the party’s true name after having been initially sued under a fictitious name, changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the applicable period of limitations or one hundred twenty (120) days of the commencement of the action, whichever comes later, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party....”
The Court of Civil Appeals has correctly stated:
“Oui* Supreme Court has held that the granting of amendments to pleadings other than those of right under Rule 15(a), Ala. R. Civ. P. are within the discretion of the [trial] court. However, if the statute of limitations has run, the amendment may relate back only if the requirements of Rule 15(c), [Ala.] R. Civ. P. are met. Ex parte Tidmore, 418 So.2d 866 (Ala.1982).”
Weaver v. Redwing Carriers, Inc., 475 So.2d 869, 871 (Ala.Civ.App.1985).
We note that federal decisions construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure because the Alabama Rules were patterned after the Federal Rules. Borders v. City of Huntsville, 875 So.2d 1168 (Ala. 2003).
*997 “The purpose of the relation back concept is to permit a claim to be tried on its merits rather than being dismissed based on a technicality so long as the purpose underlying the statute of limitations has been satisfied. James Wm. Moore, Moore’s Federal Practice § 15.19(3)(a)(Sd ed.2005). The primary purpose of statutes of limitation is to ensure that defendants have notice of an action against them before evidence has been lost or becomes unavailable and with enough time to prepare an adequate defense. [Rebecca S.] Engrav, [Relation Back of Amendments Naming Previously Unnamed Defendants Under Federal Rule of Civil Procedure 15(c), 89 Cal. L.Rev. 1549] at 1573 [ (2001) ]. Thus, if a party has been notified of litigation involving a specific factual occurrence, it has received the protection that the statute of limitations requires. See, e.g., Williams v. U.S. Postal Serv., 873 F.2d 1069, 1073 (7th Cir.1989). Under such circumstances, courts should freely grant leave to amend. Woods v. Ind. Univ.-Purdue Univ. at Indianapolis, 996 F.2d 880, 883 (7th Cir.1993) (stating that courts should attempt to avoid permitting defendants to rely on technical defects to avoid litigation).”
Mitchell v. CFC Fin., LLC, 230 F.R.D. 548, 549-50 (E.D.Wis.2005).
The United States Supreme Court recently addressed Rule 15(c)(3), Fed.R.Civ. P., in Krupski v. Costa Crociere S.p.A., — U.S. -, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010). In that case, Krupski, a passenger aboard a cruise ship, was injured while onboard. Her ticket identified the carrier as “Costa Crociere,” an Italian Corporation. Nevertheless, Krupski sued a related entity, Costa Cruise, alleging that Costa Cruise “ ‘owned, operated, managed, supervised and controlled’ the ship on which Krupski had injured herself.” — U.S. at -, 130 S.Ct. at 2490. When she filed her complaint, Krupski apparently failed to realize that the proper defendant was not Costa Cruise; rather, it was Costa Crociere. After the statute of limitations had expired, Costa Cruise asserted that it was the North American sales and marketing agent for Costa Crociere, which was the actual carrier and operator of the vessel. The district court granted Krupski leave to amend her complaint to add Costa Crociere as a party. Costa Crociere, which was represented by the same attorney who had represented Costa Cruise, contended that the amended complaint was untimely because, under the Federal Rules, it did not relate back to the filing of the original complaint. Based in part on the fact that Costa Cruise and Costa Cro-ciere shared the same counsel, the district court imputed notice of the institution of the action to Costa Crociere. See Krupski v. Costa Crociere, (No. 08-60152-CIV) (S.D.Fla., Oct. 21, 2008) (not published in F.Supp.2d). In support of this proposition, the district court cited Jacobsen v. Osborne, 133 F.3d 315, 320 (5th Cir.1998) (“[N]otice [for purposes of Fed.R.Civ.P. 15(c) ] may be imputed to the new party through shared counsel.”), and Chumney v. U.S. Repeating Arms Co., 196 F.R.D. 419, 430 (M.D.Ala.2000) (“[W]hen the original and the added defendants are represented by the same counsel, ... the institution of the action against one serves to provide notice of the litigation to the other”). Nevertheless, the district court concluded that the relation-back rule was inapplicable because Krupski had not made a “mistake” regarding the proper party when she filed her original complaint.
The United States Court of Appeals for the Eleventh Circuit affirmed the judgment of the district court, concluding that the relevant information was located on Krupski’s passenger ticket and that Krup-ski knew or should have known that Costa *998 Crociere was the proper defendant. Krupski v. Costa Crociere, 380 Fed.Appx. 892 (11th Cir.2009) (not selected for publication in the Federal Reporter). The Eleventh Circuit explained that in light of Krupski’s delay in identifying and naming the proper defendant, the district court had not exceeded its discretion in not applying the relation-back doctrine. 330 Fed.Appx. at 895.
The United States Supreme Court reversed the judgment of the Eleventh Circuit, concluding that the applicability of the relation-back doctrine is not left to the “equitable discretion” of a district court, but rather “the Rule mandates relation back once the Rule’s requirements are satisfied.” Krupski, — U.S. at -, 130 S.Ct. at 2496. The Supreme Court concluded that the Eleventh Circuit had misinterpreted Rule 15(c). It clarified that relation back depends on what the party to be added knew or should have known, not on the plaintiffs knowledge or timeliness in seeking to amend the pleading.
“By focusing on Krupski’s knowledge, the Court of Appeals chose the wrong starting point. The question under Rule 15(c)(l)(C)(ii) is not whether Krupski knew or should have known the identity of Costa Crociere as the proper defendant, but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error. Rule 15(c)(l)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period [120 days from when the original complaint is filed], not what the plaintiff knew or should have known at the time of filing her original complaint.
“Information in the plaintiffs possession is relevant only if it bears on the defendant’s understanding of whether the plaintiff made a mistake regarding the proper party’s identity. For purposes of that inquiry, it would be error to conflate knowledge of a party’s existence with the absence of mistake. A mistake is ‘[a]n error, misconception, or misunderstanding; an erroneous belief.’ Black’s Law Dictionary 1092 (9th ed.2009); see also Webster’s Third New International Dictionary 1446 (2002) (defining ‘mistake’ as ‘a misunderstanding of the meaning or implication of something’; ‘a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention’; ‘an erroneous belief; or ‘a state of mind not in accordance with the facts’). That a plaintiff knows of a party’s existence does not preclude her from making a mistake with respect to that party’s identity. A plaintiff may know that a prospective defendant — call him party A — exists, while erroneously believing him to have the status of party B. .Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the ‘conduct, transaction, or occurrence’ giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a ‘mistake concerning the proper party’s identity’ notwithstanding her knowledge of the existence of both parties. The only question under Rule 15(c)(l)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.
“Respondent urges that the key issue under Rule 15(c)(l)(C)(ii) is whether the plaintiff made a deliberate choice to sue one party over another. Brief for Respondent 11-16. We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concern *999 ing the proper party’s identity. We disagree, however, with respondent’s position that any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake. The reasonableness of the mistake is not itself at issue. As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(l)(C)(ii) has been satisfied.
“This reading is consistent with the purpose of relation back: to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits. See, e.g., Advisory Committee’s 1966 Notes 122; 3 Moore’s Federal Practice §§ 15.02[1], 15.19[3][a] (3d ed.2009). A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity. Because a plaintiff’s knowledge of the existence of a party does not foreclose the possibility that she has made a mistake of identity about which that party should have been aware, such knowledge does not support that party’s interest in repose.”
- U.S. at -, 130 S.Ct. at 2493-94 (footnote omitted).
The Eleventh Circuit Court of Appeals offered a second reason why Krupski’s amended complaint did not relate back to her original complaint: Krupski had unduly delayed in seeking to file, and in eventually filing, her amended complaint to add Costa Crociere. The Supreme Court stated:
“The Court of Appeals offered no support for its view that a plaintiffs dilatory conduct can justify the denial of relation back under Rule 15(c)(1)(C), and we find none. The Rule plainly sets forth an exclusive list of requirements for relation back, and the amending party’s diligence is not among them. Moreover, the Rule mandates relation back once the Rule’s requirements are satisfied; it does not leave the decision whether to grant relation back to the district court’s equitable discretion. See Rule 15(c)(1) (‘An amendment ... relates back ... when’ the three listed requirements are met (emphasis added)).
“The mandatory nature of the inquiry for relation back under Rule 15(c) is particularly striking in contrast to the inquiry under Rule 15(a), which sets forth the circumstances in which a party may amend its pleading before trial. By its terms, Rule 15(a) gives discretion to the district court in deciding whether to grant a motion to amend a pleading to add a party or a claim. Following an initial period after filing a pleading during which a party may amend once ‘as a matter of course,’ ‘a party may amend its pleading only with the opposing party’s written consent or the court’s leave,’ which the court ‘should freely give ... when justice so requires.’ Rules 15(a)(1) — (2). We have previously explained that a court may consider a mov-ant’s ‘undue déla/ or ‘dilatory motive’ in deciding whether to grant leave to amend under Rule 15(a). Foman v. *1000 Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). As the contrast between Rule 15(a) and Rule 15(c) makes clear, however, the speed with which a plaintiff moves to amend her complaint or files an amended complaint after obtaining leave to do so has no bearing on whether the amended complaint relates back. Cf. 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1498, pp. 142-143, and nn. 49-50 (2d ed.1990 and Supp.2010).
“Rule 15(c)(1)(C) does permit a court to examine a plaintiffs conduct during the Rule 4(m) period, but not in the way or for the purpose respondent or the Court of Appeals suggests. As we have explained, the question under Rule 15(c)(l)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiffs intent in filing the original complaint against the first defendant. To the extent the plaintiffs postfiling conduct informs the prospective defendant’s understanding of whether the plaintiff initially made a ‘mistake concerning the proper party’s identity,’ a court may consider the conduct. Cf. Leonard v. Parry, 219 F.3d 25, 29 (C.A.1 2000) (‘[P]ost-filing events occasionally can shed light on the plaintiffs state of mind at an earlier time’ and ‘can inform a defendant’s reasonable beliefs concerning whether her omission from the original complaint represented a mistake (as opposed to a conscious choice)’). The plaintiffs postfiling conduct is otherwise immaterial to the question whether an amended complaint relates back.”
— U.S. at -, 130 S.Ct. at 2496-97 (footnote omitted).
The Supreme Court stated that the original complaint made clear that Krup-ski meant to sue the company that “owned, operated, managed, supervised and controlled” the cruise ship and that she mistakenly indicated that Costa Cruise performed those roles, such that Costa Crociere should have known within the 120-day time period for filing an amended complaint that it had not been named as a defendant only because of Krupski’s misunderstanding of which entity was in charge of the ship. This misunderstanding was clearly a mistake concerning the proper party’s identity. The Supreme Court responded to Costa Croci-ere’s arguments that, because the original complaint referred to the forum requirement and claim procedures on the ticket, Krupski was aware of the ticket and that, because the ticket identified Costa Croci-ere as the proper party, Costa Crociere was entitled to presume that Krupski had made a deliberate choice to sue Costa Cruise instead of Costa Crociere. The Court stated that the fact that Krupski may have known the contents of the ticket does not foreclose the possibility that she misunderstood crucial facts regarding the companies’ identities. The Supreme Court noted that Costa Crociere had articulated no strategy under which it could reasonably have thought that Krupski was pursuing a party that was legally unable to provide her with relief. Costa Crociere also argued that Krupski’s failure to amend her complaint within 120 days of filing her original complaint showed that she did not make a mistake within that period. The Supreme Court said that any delay on Krupski’s part was relevant only to the extent it might have informed Costa Crociere’s understanding during the 120-day period of whether Krupski made a mistake originally. “Krupski’s failure to add Costa Crociere during the Rule 4(m) period is not sufficient to make reasonable any belief that she had made a deliberate and informed decision not to sue Costa Crociere in the first instance.” — U.S. at-, 130 S.Ct. at 2497-98.
*1001 “It is also worth noting that Costa Cruise and Costa Crociere are related corporate entities with very similar names; ‘crociera’ even means ‘cruise’ in Italian. Cassell’s Italian Dictionary 137, 670 (1967). This interrelationship and similarity heighten the expectation that Costa Crociere should suspect a mistake has been made when Costa Cruise is named in a complaint that' actually describes Costa Crociere’s activities. Cf. Morel v. DaimlerChrysler AG, 565 F.3d 20, 27 (C.A.1 2009) (where complaint conveyed plaintiffs’ attempt to sue automobile manufacturer and erroneously named the manufacturer as Daimler-Chrysler Corporation instead of the actual manufacturer, a legally distinct but related entity named Daimler-Chrysler AG, the latter should have realized it had not been named because of plaintiffs’ mistake); Goodman v. Praxair, Inc., 494 F.3d 458, 473-475 (C.A.4 2007) (en banc) (where complaint named parent company Praxair, Inc., but described status of subsidiary company Praxair Services, Inc., subsidiary company knew or should have known it had not been named because of plaintiffs mistake). In addition, Costa Crociere’s own actions contributed to passenger confusion over ‘the proper party’ for a lawsuit. The front of the ticket advertises that ‘Costa Cruises’ has achieved a certification of quality, App. to Pet. for Cert. 25a, without clarifying whether ‘Costa Cruises’ is Costa Cruise Lines, Costa Crociere, or some other related ‘Costa’ company. Indeed, Costa Croci-ere is evidently aware that the difference between Costa Cruise and Costa Crociere can be confusing for cruise ship passengers. See, e.g., Suppa v. Costa Crociere, S.p.A, No. 07-60526-CIV (S.D.Fla., Dec. 4, 2007) (denying Costa Crociere’s motion to dismiss the amended complaint where the original complaint had named Costa Cruise as a defendant after ‘finding] it simply inconceivable that Defendant Costa Croci-ere was not on notice ... that ... but for the mistake in the original Complaint, Costa Crociere was the appropriate party to be named in the action’).”
— U.S. at -, 130 S.Ct. at 2498.
In the present case, in order for the property owners to obtain the benefits of the relation-back doctrine when they attempted to add Novus as a new party, the amended pleading adding Novus must satisfy the requirements of Rule 15(c)(3), Ala. R. Civ. P. The party added must have received notice of the institution of the action within the applicable limitations period or within 120 days of the filing of the original complaint (whichever comes later) so that it is not prejudiced in maintaining a defense on the merits. Rule 15(c)(3). A court may impute notice of the institution of an action against the original defendant to a subsequently named defendant if there is an “identity of interests.” See Bank of Red Bay v. King, 482 So.2d 274, 280 (Ala.1985) (“‘[A]n amendment adding a new party does relate back when the old and new parties have such an identity of interest so that such relation back would not be prejudicial.... The standard which courts use in determining if an identity of interest exists, so as to allow relation back, is set out in 3 Moore’s Federal Practice, footnote 11, at 1044-45: “Courts articulating the ‘identity of interest’ standard generally require a substantial relationship between the old and new parties with regard to the litigation, as well as a sufficiently analogous legal position within the lawsuit to preclude the assertion of a new cause of action. Many of these cases involve substituting or adding related corporations....”’”); see also Goodman v. Praxair, Inc., 494 F.3d 458, 475 (4th Cir.2007) (observing identity of *1002 interest between a parent and a wholly owned subsidiary corporation such that “when a plaintiff alleges a comprehensible claim against one of a group of closely related and functioning business entities or corporations, the other entities in that group, barring a contrary showing, will be charged with knowledge under Rule 15(c)(3)(B) of the entity properly answerable to the claim”); Hernandez Jimenez v. Calero Toledo, 604 F.2d 99, 103 (1st Cir. 1979) (“The identity of interest principle is often applied where the original and added parties are a parent corporation and its wholly owned subsidiary, two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space, past and present forms of the same enterprise, or co-executors of an estate.”); Itel Capital Corp. v. Cups Coal Co., 707 F.2d 1253 (11th Cir.1983) (holding that a 97% owner of the corporation named in the original complaint was on notice of the action from the time of the original complaint); Mitchell v. CFC Fin., LLC, 230 F.R.D. 548 (E.D.Wis.2005) (holding that amendment of complaint to correct name of corporate defendant, which had been acquired through merger, was warranted); In re Tutu Wells Contamination Litig., 846 F.Supp. 1243, 1260 (D.Virgin Islands 1993) (notice under Rule 15(c)(3) was imputed to wholly owned subsidiary of named defendant where defendants shared same addresses and officers “and last, but by no means least, the corporations are represented by the same attorneys”).
Here, Novus states that it is a subsidiary of Southwest. Novus and Southwest share the same address and telephone numbers. Novus and Southwest appear to have the same employees and the same corporate representative (Grady Parsons). Novus and Southwest are represented by the same attorneys.[2] Novus and Southwest are so intertwined in their business operations that it is fair to conclude that Novus learned early on of the commencement of the original action. Additionally, we agree with the property owners that the claims asserted against Novus are the same as the claims asserted against Southwest. Novus will not be prejudiced in maintaining a defense as to the negligence and private-nuisance claims because, in responding to discovery, Southwest answered on behalf of, or as, Novus. See Jacobsen v. Osborne, 133 F.3d 315 (5th Cir.1998) (observing that the police officers knew or should have known that but for a mistake in naming the correct arresting officer the action would have been brought against them, where the city attorney answered the complaint on behalf of the city and the named officer, and presumably the city attorney investigated the allegations in answering); Brooks v. Isinghood, 213 W.Va. 675, 584 S.E.2d 531 (2003) (holding that appellees were aware of the action before the expiration of the 120-day period and before the expiration of the applicable statute of limitations because they were participating in discovery and interacting with another party’s attorney such that they knew or should have known that their conduct was at issue in the action); and *1003 Gallon v. Conmaco Int'l Inc., 99 N.M. 403, 406, 658 P.2d 1130, 1133 (1983) (observing that the purpose of Rule 15(c), Fed.R.Civ.P., is to ensure that the statute of limitations is not “ ‘used mechanically to prevent adjudication of a claim where the real parties in interest were sufficiently alerted to the proceedings or were involved in them unofficially from an early stage.’ 3 J. Moore, Moore’s Federal Practice ¶ 15.15 [4.-1] (2d ed.1982).”).
The next question we must ask is whether Novus knew or should have known that, but for a mistake by the property owners concerning the identity of the proper party, the action would have been brought against it. The property owners’ original complaint named Southwest as one of the defendants, alleging that “Southwest was a private, for profit, entity doing business in Cullman County, Alabama, with [the Board]. Southwest participated in the operation and maintenance of the facility for [the Board] and installed equipment and gave advice and assistance in the operation of the facility to [the Board].” Like the plaintiff in Krwpski, supra, the property owners were suing an entity whose conduct they described in their original complaint. Here, that entity was described as the entity that “participated in the operation and maintenance of’ and that “installed equipment” at the sewage-treatment facility and that provided “advice and assistance” to the Board, all of which the property owners allege subsequently allowed untreated raw sewage to be dumped in the waterways in Cullman County. The history of Rule 15, Fed. R.Civ.P., “indicates that it was enacted to respond to mistakes of this kind — i.e., wrongful identification of the party whose conduct is described in the complaint.” In re IndyMac Mortgage-Backed Sec. Litig., 718 F.Supp.2d 495, 507 (S.D.N.Y.2010).
Novus correctly notes that the property owners were aware of its existence before the original complaint was filed. However, the property owners’ knowledge that No-vus and Southwest both existed does not foreclose the possibility that they were mistaken concerning the roles Novus and Southwest played in the “conduct, transaction, or occurrence” giving rise to their claims. Cf. Nelson v. Adams USA, Inc., 529 U.S. 460, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000) (holding that there had been no mistake where the plaintiff obtained a judgment against a corporation and, after becoming concerned that the corporation would be unable to pay the award, the plaintiff sought to amend its pleading to add the sole shareholder of the corporation to hold him responsible).[3] The relevant question is whether Novus knew or should have known that, absent some mistake on the part of the property owners, the original complaint would have also been brought against it. Also, we note that, under the holding of Krupski, Novus’s realization that the property owners mistakenly omitted it as a defendant should have been heightened because of the interrelationship between Novus and Southwest. See Krupski, — U.S. at-, 130 S.Ct. at 2498 (“[T]his interrelationship and similarity [between Costa Cruise and Costa Croci-ere] heightened the expectation that Costa Crociere should suspect a mistake has been made when Costa Cruise is named in a complaint that actually describes Costa Crociere’s activities.”).
Novus points to a passage in the property owners’ response to its motion for a summary judgment in which the property owners refer to Southwest’s responses to *1004 discovery in causing confusion as to No-vus’s role at the sewage-treatment facility. Novus is correct that the property owners cannot rely on discovery answers to support a “mistake” made when the original complaint was filed. See Leonard v. Parry, 219 F.3d 25 (1st Cir.2000) (holding that knowledge acquired by a plaintiff after filing his original complaint is without weight in determining his state of mind at the time he filed the original complaint and, thus, in determining whether a mistake occurred, although post-filing events can be relevant to the extent that they shed light upon the plaintiffs state of mind when he filed the original complaint or inform an added party’s reasonable belief concerning the cause of the party’s omission from that complaint). However, it is clear from the materials before us that correspondence to the Board, minutes of Board meetings, and newspaper articles existed and were available to the property owners before the original complaint was filed, showing Novus’s existence and involvement. We note that, to the extent that the property owners’ post-filing conduct is relevant, it is relevant only in regard to the property owners’ state of mind at the time of filing the complaint and to Novus’s understanding of whether the property owners made a mistake regarding the identity of the proper party. Here, the property owners received answers and materials during discovery but before the statute of limitations expired that clearly indicated an interrelationship between Novus and Southwest. That information was unclear as to Novus’s and Southwest’s exact relationship. However, Novus, which was well aware of both its role and Southwest’s role in operating and maintaining the sewage-treatment facility, should have known that, but for the property owners’ misunderstanding of Novus’s and Southwest’s precise relationship, the property owners would have named Novus as a defendant in the original complaint as well. In rejecting the Court of Appeals’ focus on the plaintiffs conduct and knowledge in the first instance, the Supreme Court in Krwpski made clear that the question under the relation-back doctrine “is not whether Krupski knew or should have known the identity of Costa Crociere as the proper defendant, but whether Cos-ta Crociere knew or should have known that it would have been named as a defendant but for an error.” — U.S. at-, 130 S.Ct. at 2493.
Novus complains that, based on Southwest’s responses to discovery, the property owners at least knew of Novus’s potential liability before the expiration of the statute of limitations and should have sought to add Novus then. “A plaintiffs failure to amend its complaint to add a defendant after being notified of a mistake concerning the proper party ... may cause the unnamed party to conclude that it was not named because of strategic reasons rather than as a result of the plaintiffs mistake.” Kilkenny v. Arco Marine, Inc., 800 F.2d 853, 857 (9th Cir.1986). In Kilkenny, the plaintiffs original complaint named the wrong defendant. The named defendant answered the complaint, expressly stating the identities of the correct defendants. The plaintiff recognized this by including those defendants in a second lawsuit. However, the plaintiff did not attempt to amend her original complaint until after the statute of limitations had expired. Here, however, Southwest’s discovery responses only caused more confusion as to Novus’s relationship with Southwest. Southwest had letterhead that referred to it as “Southwest Water Company formerly Novus Utilities, Inc.” In responding to interrogatories, Southwest states that it stopped operating the facility in October 2003, but later says that Novus has not acted as the contract operator of the facili *1005 ty since October 2003. When asked to name its employees, Southwest names employees of Novus. It would be difficult to believe that Novus could have concluded that, following discovery, the property owners had not named it as a party based on a deliberate strategy. It would make no sense for the property owners to pursue Southwest when it might have been Novus that was participating in operating the sewage-treatment facility when the raw sewage was allegedly dumped into the waterways.
To the extent that Novus argues that the property owners’ mistake was not reasonable, the Supreme Court has stated:
“The reasonableness of the mistake is not itself at issue. As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(l)(C)(ii) has been satisfied.”
Krupski, — U.S. at -, 130 S.Ct. at 2494.
Novus complains that the property owners presented no evidence to support their contention that they believed Novus had merged with Southwest. The Supreme Court, in applying Rule 15(c), Fed. R. Civ. P., in Krupski, focused its analysis on the pleadings. There is no reference in the opinion to any affidavit. Rather, the Supreme Court imputed knowledge of the claim to the subsequently named defendant without addressing whether the plaintiff had presented an affidavit to show proof of her mistake in not naming it as a defendant in her original complaint.

Conclusion

Based on the foregoing, Novus’s petition for a writ of mandamus is due to be denied.
PETITION DENIED.
MALONE, C.J., and WOODALL, STUART, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs in the result.

. In Ex parte Capstone Building Corp., [Ms. 1090966, June 3, 2011] (Ala.2011) [on March 16, 2012, this Court withdrew the June 3, 2011, opinion and substituted another one, - So.3d -], this Court overruled McKenzie v. Killian, 887 So.2d 861 (Ala. 2004), to the extent that it held that the six-year statute of limitations in § 6-2-34, Ala. Code 1975, applied to wantonness claims, reaffirmed the proposition that wantonness claims are governed by the two-year statute of limitations embodied in § 6-2-38(Z), Ala. Code 1975, and specified that litigants whose causes of action accrued on or before June 3, 2011 (the date [the original opinion in] Capstone was decided), shall have two years from that date to bring their wantonness claims unless under the six-year statute of limitations for wantonness recognized in McKenzie the limitations period would expire sooner. Additionally, the property owners also argue that Novus is being inconsistent by arguing before the trial court that its wantonness claim was barred by the statute of limitations and by arguing now that the wantonness claim was not directed toward it. (Bracketed language added by the reporter of decisions.)

. Several federal courts have applied the "shared-attorney” method of imputing notice as well as the method of imputing notice on the ground of identity of interest. See Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 196 (3d Cir.2001) (holding that the shared-attorney method of imputing notice under Rule 15(c) “is based on the notion that, when an originally named party and the party sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action”); Gleason v. McBride, 869 F.2d 688, 693 (2d Cir. 1989); Barkins v. International Inns, Inc., 825 F.2d 905, 907 (5th Cir. 1987); and Berndt v. Tennessee, 796 F.2d 879, 884 (6th Cir. 1986).

. The plaintiff in Nelson did not seek to impose liability on the sole shareholder by piercing the corporate veil.